*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0206p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

BRANDON FOX,

*Plaintiff-Appellant,*

v.

No. 06-5930

RONALD DESOTO, LOUISVILLE REGIONAL AIRPORT
AUTHORITY,

*Defendants-Appellees.*

---

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 04-00747—Charles R. Simpson III, District Judge.

Argued: April 25, 2007

Decided and Filed: June 4, 2007

Before: GUY, COLE, and McKEAGUE, Circuit Judges.

---

## COUNSEL

**ARGUED:** Garry Adams, Jr., CLAY, KENEALY, WAGNER & ADAMS, Louisville, Kentucky,
for Appellant. Jennifer B. Swyers, STITES & HARBISON, Louisville, Kentucky, for Appellees.
**ON BRIEF:** Garry Adams, Jr., Wendi S. Wagner, CLAY, KENEALY, WAGNER & ADAMS,
Louisville, Kentucky, for Appellant. Jennifer B. Swyers, Robert W. Griffith, STITES &
HARBISON, Louisville, Kentucky, for Appellees.

---

## OPINION

---

RALPH B. GUY, JR., Circuit Judge. Plaintiff Brandon Fox appeals from the judgment
entered in favor of defendants Officer Ronald DeSoto and the Louisville Regional Airport Authority
on claims arising from his arrest and subsequent prosecution for disorderly conduct and resisting
arrest. The district court dismissed plaintiff's state law claims for false arrest and imprisonment and
for assault and battery as time-barred, and granted summary judgment to defendants on the
remaining claims. The district court found DeSoto was entitled to qualified immunity on the
plaintiff's Fourth Amendment claims, and concluded that the plaintiff could not prevail on either the
claim for malicious prosecution against DeSoto or on the derivative claim against the Airport
Authority for negligent hiring, training, and/or retention of DeSoto. After review of the record and

1

the applicable law, we affirm the judgment, albeit on the somewhat different grounds as dictated by the recent decision in *Wallace v. Kato*, 127 S. Ct. 1091 (2007).

**I.**

On September 2, 2002, plaintiff Brian Fox was a Special Agent of the Internal Revenue Service (IRS) planning to travel from Louisville, Kentucky, to Chicago, Illinois, on a flight operated by Southwest Airlines. Fox was authorized to travel with the weapon he was carrying, had completed the necessary paperwork, and had been screened at the security checkpoint. He boarded the airplane and had not yet been introduced to the captain and crew as is required by regulation, when he got into a verbal exchange with a female passenger and her fiancé.

There is no dispute that Fox was having some difficulty fitting his carry-on luggage into an overhead bin and was blocking the aisle. The female passenger told plaintiff that the bag was not going to fit and complained that he was blocking the way. Fox admitted that he told her to "fuck off" and that her fiancé spoke up aggressively in her defense. Although there was testimony that Fox told him to "fuck off" as well, Fox did not recall saying anything to him. Fox returned to his seat, but the exchange had come to the attention of a flight attendant who asked the pilot if they could remove someone for cursing at another passenger.

Captain Jeff Hefner told her that they could, but she became uncomfortable about approaching Fox when she learned that he was armed. Hefner intervened, called Fox forward, confirmed that Fox had said "fuck off" to another passenger, and then ordered Fox off the airplane without giving him an opportunity to explain. While Fox retrieved his bag, Hefner called for security to come to the gate and then escorted Fox down the jetway to the gate area. Hefner advised the gate agent and TSA employees that he was removing an armed individual who purported to be an IRS agent for causing a disturbance on the aircraft. Fox asked to speak with Southwest's Ground Security Coordinator, as he had been trained to do if he encountered problems while traveling with a weapon. He then took a seat in the gate area.[1]

Fox testified that he was surprised that security had been called, and felt overwhelmed and a little anxious and embarrassed. Officer DeSoto, who was employed by the Regional Airport Authority, as well as Officer Minton and Lt. Clark, responded to the gate area. Fox was asked for identification several times, but he refused to talk with anyone and repeatedly asked for the Ground Security Coordinator. After several minutes, DeSoto approached and asked Fox to identify himself. Fox refused to talk to him and asked again for the Ground Security Coordinator. Michelle Miller arrived and approached Fox, asking if he had checked any luggage and telling him that he would be rebooked on another flight. Miller testified that she was employed as a Customer Service Supervisor as well as being the designated Ground Security Coordinator on duty at that time. Miller stated that she told Fox as much, while Fox denied that she had. Fox would not talk with Miller, so she went to the gate agent and determined that Fox had not checked any luggage.

DeSoto testified that Fox had begun to draw the attention of other passengers who began gathering around to watch instead of attending to their business. DeSoto decided to remove Fox from the area, asked Fox to come with him to talk somewhere else, and took Fox's arm to have him stand up. DeSoto claimed that Fox stiffened, made a fist, and reached for his right side. Fox denied

---

[1] Federal regulations require that: "Each aircraft operator must designate and use a Ground Security Coordinator for each . . . departure to carry out the Ground Security Coordinator duties specified in the aircraft operator's security program." 49 C.F.R. § 1544.215. The GSC is also supposed to review all security related functions daily for effectiveness and compliance with federal regulation. *Id*. Whether Fox was justified in insisting on speaking *only* to a GSC is not material to the claims at issue.

making a fist, but admitted that he stood up and reached for his right side. Fox testified that he was reaching for his credentials, but admitted that he was also carrying his weapon on the right.

It was then that DeSoto used an arm-bar hold to take Fox down to the floor. DeSoto held Fox face down, with a knee on the back of his head, and handcuffed him. DeSoto required some assistance getting the handcuffs on, and tossed away plaintiff's weapon, ammunition clips, and identification. In the process, Fox suffered a cut and bruising below one eye. Arrested on misdemeanor charges of disorderly conduct and resisting arrest, Fox was taken to the jail and later released. The state criminal trial, which was not held until June 9, 2004, ended with the state trial judge granting a directed verdict in favor of Fox on both charges.

Six months later, on December 28, 2004, plaintiff filed this action against DeSoto and the Airport Authority asserting claims under federal and state law. Fox alleged that DeSoto arrested him without probable cause and used excessive force in violation of the Fourth Amendment. 42 U.S.C. § 1983. State law claims for false arrest and imprisonment, assault and battery, and malicious prosecution were also asserted against DeSoto. Finally, a derivative claim was alleged against the Airport Authority for negligent hiring, training, and/or retention of DeSoto.

After an opportunity for discovery, defendants filed a motion seeking, in the alternative, dismissal of the claims as time-barred, or summary judgment on the merits. The motion was resolved in defendants' favor on June 6, 2006, with the district court dismissing the state law claims for false arrest and imprisonment and for assault and battery as untimely, and granting summary judgment to the defendants on all remaining claims. Judgment was entered accordingly, and plaintiff appealed.

## II.

A determination that a claim was filed outside the applicable statute of limitations is a conclusion of law that this court reviews *de novo*. *Tolbert v. State of Ohio Dep't of Transp.*, 172 F.3d 934, 938 (6th Cir. 1999). The district court's decision granting summary judgment is also reviewed *de novo*. *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997). Summary judgment is appropriate when there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### A.        Statute of Limitations

As the district court concluded and the parties agree, all of the plaintiff's claims in this case are governed by a one-year statute of limitations. The constitutional claims asserted under 42 U.S.C. § 1983 are governed by the state personal injury statute of limitations. *Wilson v. Garcia*, 471 U.S. 261, 280 (1985); *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990). In Kentucky, an action for injury to a person, for arrest, or for malicious prosecution "shall be commenced within one (1) year after the cause of action accrued." KY. REV. STAT. § 413.140(1). The controversy in this case concerns when the claims accrued— except, of course, for the malicious prosecution claim which did not accrue until plaintiff was acquitted in June 2004.

State law claims for false arrest and false imprisonment, which constitutes a single cause of action in Kentucky when law enforcement is involved, as well as assault and battery arising out of an arrest, generally accrue at the time of the arrest. *See Dunn v. Felty*, No. 2004-CA-1029-MR, 2005 WL 736596, at *2 (Ky. App. Apr. 1, 2005) (unpublished decision) (*review granted* Nov. 16,

2005).**[2]**  For the Fourth Amendment claims for arrest without probable cause and the use of excessive force during the arrest, federal law determines when the statute of limitations begins to run on a § 1983 claim. *Wallace v. Kato*, 127 S. Ct. 1091, 1095-96 (2007); *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001).

Under federal law, the limitations period begins to run when a plaintiff knew or should have known of the injury that forms the basis of the claim. *Ruff*, 258 F.3d at 500. In fact, the Court in *Wallace* specifically held that a claim for wrongful arrest under § 1983 accrues at the time of the arrest or, at the latest, when detention without legal process ends. 127 S. Ct. at 1095-96. A § 1983 claim for excessive force in effectuating an arrest accrues at the time of arrest. *Id*. at 1095. Absent some tolling or delay in accrual, all of these claims would be untimely because they were not brought until December 28, 2004, more than two years after the arrest.

Plaintiff argued that the limitations period did not begin to run on the state or federal claims until after the dismissal of the criminal charges on June 9, 2004, in reliance on *Heck v. Humphrey*, 512 U.S. 477 (1994), as interpreted and extended by this court in *Shamaeizadeh v. Cunigan*, 182 F.3d 391, 398 (6th Cir. 1999). The district court, faithful to this court's holding in *Shamaeizadeh*, agreed with plaintiff in part—finding that the statute of limitations did not begin to run on the § 1983 claims but declining to extend the same tolling to the state law claims. As a result, the district court found the § 1983 claims were timely, but dismissed the state law claims as barred by the statute of limitations.

On appeal, plaintiff argues that the *Heck* bar should apply equally to the state law claims. Not surprisingly, plaintiff offers no authority to support this proposition. In fact, *Heck* specifically concerned the clash between § 1983 and the federal habeas corpus statute, 18 U.S.C. § 2254. This does not end the matter, however, because the Supreme Court's decision in *Wallace*, issued during the pendency of this appeal, effectively abrogates the holding in *Shamaeizadeh* and clarifies that *Heck* has no application to the § 1983 claims in this case.**[3]**

In *Heck*, a state prisoner filed suit under § 1983 asserting claims that, if true, would have demonstrated the invalidity of his conviction. Analogizing to malicious prosecution, the Court held that to recover damages under § 1983 for an allegedly unconstitutional conviction, "or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," the plaintiff must prove that the conviction or sentence has been reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus. 512 U.S. at 486-87. The Court in *Heck* declared that: "A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." *Id*. The Court also noted that, in such a case, the statute of limitations would pose no problem because a cause of action that would imply the invalidity of a conviction would not accrue until the conviction was reversed or expunged, and the statute of limitations would not begin to run until then. *Id*. at 489-90.

This court, drawing on the reasoning in *Heck* and acknowledging that *Heck* did not resolve the issue, joined other courts in extending application of *Heck* and its effect on the statute of limitations to certain pre-conviction circumstances. *Shamaeizadeh*, 182 F.3d at 398. As a result, we held that when a § 1983 claim would imply the invalidity of a *future* conviction, the statute of limitations would not begin to run until the criminal charges have been dismissed. *Id*. at 398-99;

---

**[2]**The plaintiff in *Dunn* has urged the Kentucky Supreme Court to adopt some tolling principle that might apply in situations like this one. Fox did not make a similar argument in this case, and must concede that Kentucky law does not recognize such tolling.

**[3]***See also Kucharski v. Leveille*, 478 F. Supp.2d 928, (E.D. Mich. 2007); *Watts v. Epps*, 475 F. Supp.2d 1367 (N.D. Ga. 2007) (tolling under *Heck* does not apply in the pre-conviction context).

*see*, *e.g.*, *Wolfe v. Perry*, 412 F.3d 707, 714-15 (6th Cir. 2005); *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 856 (6th Cir. 2003); *Hodge v. City of Elyria*, 126 F. App'x 222 (Mar. 3, 2005) (finding claim would not impugn a future conviction). In no uncertain terms, however, the Court in *Wallace* clarified that the *Heck* bar has no application in the pre-conviction context.

Specifically, the Court in *Wallace* stated that "the *Heck* rule for deferred accrual is called into play only when there exists a 'conviction or sentence that has not been . . . invalidated,' that is to say, an 'outstanding criminal judgment.' It delays what would otherwise be the accrual date of a tort action until the setting aside *of an extant conviction* which success in that tort action would impugn." 127 S. Ct. at 1097-98. The meaning of this is made patently clear by the following passage:

> What petitioner seeks, in other words, is the adoption of a principle that goes well beyond *Heck*: that an action which would impugn *an anticipated future conviction* cannot be brought until that conviction occurs and is set aside. The impracticality of such a rule should be obvious. In an action for false arrest it would require the plaintiff (and if he brings suit promptly, the court) to speculate about whether a prosecution will be brought, whether it will result in conviction, and whether the pending civil action will impugn that verdict, *see Heck*, 512 U.S. at 487, n.7–all this at a time when it can hardly be known what evidence the prosecution has in its possession. And what if the plaintiff (or the court) guesses wrong, and the anticipated future conviction never occurs, because of acquittal or dismissal? Does that event (instead of the *Heck*-required setting aside of the extant conviction) trigger accrual of the cause of action? Or what if prosecution never occurs–what will the trigger be then?
>
> We are not disposed to embrace this bizarre extension of *Heck*. If a plaintiff files a false arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended. . . . If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit.

*Id.* at 1098 (citations omitted).

*Wallace* clarifies the distinction between claims of malicious prosecution, such as the one addressed in *Heck*, and claims of false arrest and false imprisonment. As noted above, *Heck* held that a claim of malicious prosecution does not accrue until the underlying conviction is invalidated, 512 U.S. at 489-90, and this holding was reaffirmed in *Wallace*. 127 S. Ct. at 1098. The statute of limitations for a claim for false arrest, however, "where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Id.* at 1100. The *Wallace* Court rejected both the argument that the statute of limitations on a false arrest claim should begin only after "an anticipated future conviction . . . occurs and is set aside," *id.* at 1098, and that the statute of limitations on such a claim should be tolled until an anticipated future conviction is set aside, *id.* at 1099. Accordingly, the possibility that the plaintiff's already-accrued § 1983 claims might impugn an anticipated future conviction did not trigger the *Heck* rule for deferred accrual. Thus, we not only affirm the dismissal of the state law claims as time-barred, but also find that the plaintiff's Fourth Amendment claims were likewise barred by the one-year statute of limitation and should have been dismissed as untimely.

Alternatively, we would also affirm the district court's determination that DeSoto was entitled to qualified immunity with respect to the plaintiff's Fourth Amendment claims for the reasons that follow.

## B. Fourth Amendment Claims

In considering a claim for qualified immunity, courts must first address the threshold question of whether, taken in the light most favorable to the party asserting the injury, the alleged facts show the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If a violation could be made out taking the facts in the light most favorable to the plaintiff, then the next step is to determine whether the right was clearly established in a particularized sense, such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202. Qualified immunity is a question of law, which we review *de novo*. *Dickerson v. McClellan*, 101 F.3d 1151, 1157 (6th Cir. 1996).

### 1. Search and Seizure

Relying on state law, Fox argues that the search and seizure was unlawful because DeSoto did not have a warrant and exigent circumstances were not present. This argument misapprehends the relevant law. A warrantless arrest by an officer is reasonable under the Fourth Amendment when the arrest is in public and there is probable cause to believe that a criminal offense has been or is being committed. *United States v. Watson*, 423 U.S. 411, 417 (1976). Fox also seems to argue that the probable cause determination is limited by the officer's subjective reasons for making the arrest. On the contrary, because the probable cause inquiry is an objective one, the officer's subjective reasons for making an arrest need not be the criminal offense for which the known facts provided probable cause. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). Rather, the existence of probable cause "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Id*. at 152.

For probable cause to exist, the facts and circumstances within the officers' knowledge must be sufficient to warrant a man of reasonable caution to believe that an offense had been, was being, or was about to be committed. *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949). The facts known to DeSoto included the report from Captain Hefner that plaintiff was armed, that plaintiff purported to be an IRS agent but had not shown Hefner his credentials, and that plaintiff had been removed from the flight for causing a disturbance. DeSoto responded to the call for assistance, and arrived to find plaintiff seated in the gate area but uncooperative.

Specifically, Fox would not speak to any of the security personnel, including DeSoto; did not present his credentials or documentation showing he was authorized to fly armed; and persistently refused to identify himself or answer any questions even after the Ground Security Coordinator arrived. Other passengers began gathering around to watch instead of attending to their business, and DeSoto asked Fox to come with him to talk somewhere else. When DeSoto took his arm, Fox stood, pulled away, and reached for his right side where he kept both his credentials and his weapon. Faced with an armed individual in the secured area of the airport who refused to cooperate or identify himself, had already been removed from a flight for creating a disturbance, and was pulling away from the officer and reaching for something, a reasonable officer would believe that individual had or was about to engage in disorderly conduct in violation of Ky. Rev. Stat. § 525.060.[4]

---

[4] Under Kentucky law, a person is guilty of disorderly conduct, a Class B misdemeanor, when "in a public place and with intent to cause public inconvenience, annoyance, or alarm, or wantonly creating a risk thereof," he "(a) Engages in fighting or in violent, tumultuous or threatening behavior; or (b) Makes unreasonable noise; or (c) Refuses to obey an official order to disperse issued to maintain public safety in dangerous proximity to a fire, hazard, or other emergency;

### 2.     Excessive Force

Claims of excessive force are analyzed under the objective-reasonableness standard, which depends on the facts and circumstance of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight. *Graham v. Connor*, 490 U.S. 386, 395-96 (1989). An officer making an investigative stop or arrest has "the right to use some degree of physical coercion or threat thereof to effect it." *Id.* Relevant considerations include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396. The question we must ask is whether, under the totality of the circumstances, the officer's actions were objectively reasonable. *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001).

The force used by DeSoto was exerted in effectuating the arrest and consisted of the takedown and restraint of plaintiff until he could be handcuffed. Fox suffered a cut and some bruising below one eye. While the offense was not severe, DeSoto had reason to be concerned about the safety of himself and others under the circumstances. Fox was believed to be armed, had been removed from the flight for creating a disturbance, continued to be uncooperative, and refused to identify himself or answer any questions. When Fox stood up, pulled away from DeSoto, and reached for his side, a reasonable officer on the scene would have reason to believe some force was necessary. We agree with the district court that the force used by DeSoto to effectuate the arrest was objectively reasonable under the circumstances.

Therefore, even if these claims were not time-barred, summary judgment was properly entered because Fox has not alleged facts that would demonstrate a Fourth Amendment violation.[5]

## C.     Malicious Prosecution

Although not entirely clear from the complaint, plaintiff seems to be asserting a claim for malicious prosecution under both state law and § 1983. The district court granted summary judgment to DeSoto on the claim for malicious prosecution, albeit without specifying whether the claim was brought under state or federal law. Nonetheless, we agree that, however pleaded, plaintiff cannot prevail on a claim for malicious prosecution against DeSoto.

This court has recognized a § 1983 claim for malicious prosecution arising under the Fourth Amendment, but the contours of such a claim remain uncertain. *Wallace*, 127 S. Ct. 1096, n. 2; *McKinley v. City of Mansfield*, 404 F.3d 418, 444-45 (6th Cir. 2005), *cert. denied*, 126 S. Ct. 1026 (2006); *Darrah v. City of Oak Park*, 255 F.3d 301, 308-12 (6th Cir. 2001). What is certain, however, is that such a claim fails when there was probable cause to prosecute, or when the defendant did not make, influence, or participate in the decision to prosecute. *McKinley*, 404 F.3d at 444-45; *Darrah*, 255 F.3d at 312; *Skousen v. Brighton High Sch.*, 305 F.3d 520, 529 (6th Cir. 2002). Likewise, to establish the tort claim of malicious prosecution under Kentucky law, a plaintiff must demonstrate (1) the institution or continuation of judicial proceedings, (2) *by or at the instance of the defendant*, (3) the termination of such proceedings in the plaintiff's favor, (4) malice in the institution of the proceedings, (5) *the absence or lack of probable cause for the proceeding*, and (6) that damages resulted. *Raine v. Draisin*, 621 S.W.2d 895, 899 (Ky. 1981).

---

or (d) Creates a hazardous or physically offensive condition by any act that serves no legitimate purpose." KY. REV. STAT. § 525.060.

[5]To the extent that Fox may assert a distinct claim for unreasonable search, we find that the search of plaintiff's person to retrieve the weapon, ammunition, handcuffs, and identification was a lawful search incident to arrest. *Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980); *United States v. Montgomery*, 377 F.3d 582, 586 (6th Cir. 2004).

In this case, there is no evidence indicating what role, if any, DeSoto played in instituting the criminal proceedings against Fox. DeSoto was, however, personally involved in the determination that there was probable cause to arrest Fox for disorderly conduct and resisting arrest. Even if Fox could show that DeSoto made, influenced, or participated in the decision to prosecute him, Fox cannot prevail on the claim for malicious prosecution under either federal or state law. That is, for the reasons discussed above, we agree with the district court that Fox cannot demonstrate an absence or lack of probable cause for the criminal proceedings. Accordingly, we affirm the grant of summary judgment to DeSoto on plaintiff's claim for malicious prosecution whether asserted under state or federal law.

## D.      Negligent Hiring, Training, and Retention

With respect to the claim of municipal liability under § 1983, plaintiff argued that the Airport Authority failed to exercise ordinary care in the hiring, training and/or retention of DeSoto. As the district court observed, the applicable standard for municipal liability is deliberate indifference. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 411 (1997). As a result, the district court found that the failure of "ordinary care" asserted by plaintiff was insufficient to establish municipal liability under § 1983. Even before reaching the issue of whether the municipality was deliberately indifferent, however, the plaintiff must demonstrate a constitutional violation at the hands of an agent or employee of the municipality. *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006); *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001). This is, of course, because municipal defendants may only be sued under § 1983 for their own unconstitutional or illegal policies and may not be held vicariously liable for the  unconstitutional acts of their employees. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Having concluded that plaintiff has failed to demonstrate a constitutional violation, whether for unreasonable search and seizure, excessive force, or malicious prosecution, we find plaintiff cannot prevail on his claim for municipal liability under § 1983.

Moreover, while it appears that plaintiff did not marshal his evidence regarding an alleged municipal custom or policy in response to the defendants' dispositive motions, we cannot help but note that the evidence recounted on appeal simply falls short of what is needed to demonstrate deliberate indifference. Plaintiff specifically asserts that the Airport Authority's failure to adequately scrutinize DeSoto's background constituted deliberate indifference to the rights of persons with whom he would come in contact. *Harris*, 489 U.S. at 388. The Supreme Court has explained, as the district court noted, that:  "Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to scrutinize the applicant's background constitute 'deliberate indifference.'" *Brown*, 520 U.S. at 411. Nothing in the litany of DeSoto's shortcomings suggests that the "plainly obvious consequence" of a decision to hire him would be the deprivation of a third party's federally protected rights.

The judgment entered in favor of defendants DeSoto and the Airport Authority is **AFFIRMED**.