*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 10a0111p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

MARION BINAY; JOSELITO BINAY; SB, a
minor child, by Marion Binay and Joselito
Binay, Next Friends,

　　　　　　　*Plaintiffs-Appellees,*

　　　　　　*v.*

BETTENDORF, Officer (09-1249),
PONGRACZ, Officer (09-1400),
　　　　　　　*Defendants-Appellants.*

Nos. 09-1249/1400

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 07-15160—Bernard A. Friedman, District Judge.

Argued:  March 3, 2010

Decided and Filed:  April 20, 2010

Before:  KEITH, CLAY, and GRIFFIN, Circuit Judges.

————————————

## COUNSEL

**ARGUED:**  Joseph Nimako, CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C.,
Livonia, Michigan, Stephon B. Bagne, KUPELIAN, ORMOND & MAGY, Southfield,
Michigan, for Appellants.  Michael M. Wachsberg, PEDERSEN, KEENAN, KING,
WACHSBERG & ANDRZEJAK, P.C., Commerce Township, Michigan, for Appellees.
**ON BRIEF:**  Joseph Nimako, CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C.,
Livonia, Michigan, for Appellants.  Michael M. Wachsberg, PEDERSEN, KEENAN,
KING, WACHSBERG & ANDRZEJAK, P.C., Commerce Township, Michigan, for
Appellees.

1

---

## OPINION

---

CLAY, Circuit Judge. Defendants, Officers Pongracz and Bettendorf, appeal the district court's orders denying summary judgment to Defendants on the basis that they are not entitled to qualified immunity under federal law or governmental immunity under Michigan law. For the reasons set forth below, we **AFFIRM** the district court's orders.

### BACKGROUND

Plaintiffs Marion Binay, Joselito Binay, and Sean Binay brought this suit against Defendants, Downriver Area Narcotics Division ("DRANO"), Lieutenant Menna, and Officers Jones, Bettendorf, Brown and Pongracz, alleging violations of 42 U.S.C. § 1983 and various Michigan state laws in connection with Defendants' execution of a search warrant at Plaintiffs' apartment. DRANO is a multijurisdictional law enforcement task force under the authority of the Michigan State Police.

Marion and Joselito Binay, along with their son Sean Binay, were living at an apartment located at 11320 Burlington, Apartment 460 in Southgate, Michigan, when Officer Pongracz, a member of DRANO, received an anonymous call that narcotics trafficking was occurring at Plaintiffs' apartment. Acting on this tip, several DRANO officers, a canine handler from the Southgate Police Department, and his dog, Apollo, went to the apartment on December 13, 2006 and January 9, 2007.[1] On both occasions, Apollo indicated positive for narcotics on the outside of the door to Plaintiffs' apartment. On the same visits, Apollo sniffed other apartment doors and a couple of storage doors, but only made positive indications on Plaintiffs' door.

Based on the two positive dog indications and the anonymous call, Officer Pongracz determined that he had probable cause for a search warrant, and he informed

---

[1]Apollo is a full service narcotics detection dog. The DRANO search team gained entry to the common area of Plaintiffs' apartment complex using a key that the building's management gave to Officer Pongracz for conducting narcotics investigations.

Lieutenant Menna that he wanted to request a warrant.  On January 9, 2007, Assistant Prosecuting Attorney Sarah De Young reviewed and authorized Officer Pongracz's affidavit, and Judge James A. Kandrevas of the 28th District Court signed the search warrant.[2]

A DRANO search team composed of the individual Defendants executed the warrant for Apartment 460 on January 10, 2007 and found no evidence of narcotics trafficking.  Pursuant to DRANO policies, Officer Pongracz prepared a "Confidential Operation Plan" prior to the raid of Plaintiffs' apartment, which outlined procedures and problems anticipated during the search of Plaintiffs' residence.  The Confidential Operation Plan indicated that the officers did not anticipate the presence of firearms.

Plaintiffs and Defendants dispute the facts surrounding the execution of the search warrant. Mr. Binay testified that at approximately 8:20 p.m. he heard a knock at the door of Plaintiffs' apartment and was walking the seven to ten steps to answer the door when six masked men knocked down the door.  Defendants brandished weapons as they entered the apartment and forced Mr. and Mrs. Binay to the floor.  Defendants pointed their guns at Mr. and Mrs. Binay, instructed them not to look at the officers, and handcuffed them.  Because the officers were wearing masks, Plaintiffs were unable to see the faces of the officers who handcuffed them.  Defendants secured the kitchen, bathroom, and two bedrooms within moments, during which time the officers found Mr. and Mrs. Binay's son in a bedroom and forced him into the living room.  Then the drug sniffing dog went through the premises and found no scent or presence of narcotics anywhere in the apartment.  The dog was out of the apartment within 15 minutes. Defendants then ransacked each room for the next few minutes but found nothing.  The officers who conducted the search reported the results to Lieutenant Menna and Officer Pongracz.  At that point, after completing the search, Defendants interrogated Plaintiffs, who continued to be handcuffed and held at gunpoint.  Plaintiffs submitted to the officers

---

[2]On January 9, 2007, Defendants also obtained a search warrant for 11300 Burlington, Apartment 453, which was located adjacent to Plaintiffs' residence.  Defendants testified that they intended to execute both search warrants on the same day, but Defendants only made it through a search of Apartment 453 on January 9, 2007.  At Apartment 453, DRANO officers seized, among other things, approximately 8,000 grams of marijuana, cash in excess of $6,000, and a stolen 9 mm handgun with ten rounds of ammunition.

and cooperated throughout the entire ordeal.  Defendants left after approximately an hour without finding narcotics.

Defendants contest a number of these factual assertions.  Relevant to this appeal is Defendants' claim that the facts are undisputed that the interrogation of Plaintiffs and the search of the apartment occurred simultaneously.  Defendants argue that Mr. and Mrs. Binay's testimony concerning the timeline of events supports Defendants' position by showing that even Plaintiffs admit that the search and interrogation happened at the same time.  Mr. Binay testified that after the police knocked down the door, ordered Plaintiffs to the floor, and handcuffed them, "I was actually asking this guy what was going on and they just ignore [sic] us.  And there is this guy who approached us and asked us to lead us to the dining area.  And we were seated there.  And I think that was the leader.  At that time, he started interrogating us . . ."  (R.E. 51 Ex. G at 17).  Mrs. Binay testified that after being handcuffed Plaintiffs were "taken to the dining room" and after that the "leader [of the officers] talked to us."  (R.E. 51 Ex. I at 50).  In addition, Defendants rely on the testimony of Lieutenant Menna, Officer Pongracz, Officer Bettendorf, and Officer Brown to support their argument that it is undisputed that the interrogation occurred at the same time as the search.  In particular, Defendants note that Officer Jones testified that he was still searching his area when Lieutenant Menna, who was conducting the interrogation, told him that "we were wrapping it up."  (R.E. 72 Ex. T at 34).

Plaintiffs also allege that Officer Pongracz was armed with a shotgun during the raid.  Officer Bettendorf admitted in his deposition testimony to carrying a pistol during the raid and to searching the master bedroom.  Officer Pongracz admitted in his deposition testimony to executing a "hard entry" based on orders from Lieutenant Menna and to ordering Mr. Binay to the ground in the hallway of the apartment with his shotgun drawn.  He also admitted to conducting a hand search of Mr. and Mrs. Binay's master bedroom and to seizing a "Wow!" cable bill from Plaintiffs' residence.  Both Officer Bettendorf and Officer Pongracz testified that Officer Pongracz was the leader of the raid.

On November 6, 2007, Plaintiffs filed this lawsuit in Wayne County Circuit Court, alleging state torts of false arrest, false imprisonment, and assault and battery, as well as federal and state constitutional violations. On December 5, 2007, Defendants removed Plaintiffs' lawsuit to the United States District Court for the Eastern District of Michigan. On February 26, 2008, the district court dismissed Plaintiffs' state constitutional claim pursuant to *Jones v. Powell*, 612 N.W.2d 423 (2000).

On January 9, 2009, the district court denied in part and granted in part Officer Pongracz's motion for summary judgment. At a hearing on January 27, 2009, the district court denied in part and granted in part Officer Bettendorf's motion for summary judgment. The court denied both officers' motions for summary judgment as to Plaintiffs' federal excessive force claim, finding that the officers were not entitled to qualified immunity. The court denied both officers' motions for summary judgment as to Plaintiffs' state law claims of assault and battery, finding that the officers were not entitled to governmental immunity. The court granted both officers' motions for summary judgment as to Plaintiffs' unlawful search claim under the Fourth Amendment, finding that there was probable cause for the search. The court also granted both officers' motions for summary judgment as to Plaintiffs' false arrest and false imprisonment claims under Michigan state law. Thus, those claims were dismissed from the case.

On January 22, 2009, Officer Pongracz sought reconsideration of the district court's rulings with respect to whether he was entitled to summary judgment on Plaintiffs' remaining claims based on qualified immunity and governmental immunity. On February 25, 2009, Officer Bettendorf filed a timely notice of appeal. On March 10, 2009, the district court denied Officer Pongracz's motion for reconsideration. On March 27, 2009, Officer Pongracz filed a timely notice of appeal.

**DISCUSSION**

## I. Qualified Immunity

### A. Jurisdiction

We have jurisdiction pursuant to 28 U.S.C. § 1291 over Defendants' appeal of the district court's denial of qualified immunity. *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). However, "[i]n considering the denial of a defendant's claim of qualified immunity, . . . our jurisdiction is limited to resolving pure questions of law." *Moldowan v. City of Warren*, 578 F.3d 351, 369 (6th Cir. 2009) (citing *Mitchell*, 472 U.S. at 530 (addressing denial of a claim of qualified immunity, but only "to the extent that it turns on an issue of law")). Thus, if "the defendant disputes the plaintiff's version of the story, the defendant must nonetheless be willing to concede the most favorable view of the facts to the plaintiff for purposes of the appeal." *Moldowan*, 578 F.3d at 370 (quoting *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998)). *See also Meals v. City of Memphis*, 493 F.3d 720, 726-27 (6th Cir. 2007) ("[A] defendant is required to limit her argument to questions of law premised on facts taken in the light most favorable to the plaintiff."); *Sheets v. Mullins*, 287 F.3d 581, 585 (6th Cir. 2002) ("In this circuit, it is well established that, for appellate jurisdiction to lie over an interlocutory appeal, a defendant seeking qualified immunity must be willing to concede to the facts as alleged by the plaintiff and discuss only the legal issues raised by the case.").

### B. Standard of Review

We review a district court's grant of summary judgment *de novo*. *Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 792 (6th Cir. 2009). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, "show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We must view the evidence in the light most favorable to Plaintiffs to determine whether a genuine issue of material fact exists. *Birgell v. Bd. of Comm'rs of Butler County, Ohio*, 125 F.3d 948, 950 (6th Cir 1997). "The central issue is 'whether the evidence presents

a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *In re Calumet Farm, Inc.*, 398 F.3d 555, 558 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

The fact that Defendants' motions for summary judgment were based on claims of qualified immunity does not affect our standard of review.  *Moldowan*, 578 F.3d at 374 (internal citation omitted).  The question of whether a defendant is entitled to qualified immunity from liability under 42 U.S.C. § 1983 is a legal question that we review *de novo*.  *Id.*

### C.  Analysis

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "The central purpose of affording public officials qualified immunity from suit is to protect them 'from undue interference with their duties and from potentially disabling threats of liability.'" *Elder v. Holloway*, 510 U.S. 510, 514 (1994) (quoting *Harlow*, 457 U.S. at 806).

In reviewing claims for qualified immunity, we conduct a two-step analysis. *See Scott v. Harris*, 550 U.S. 372, 377 (2007).  First, we consider whether "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right." *Id.* at 377 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  If the answer is yes, we next ask "whether the right was clearly established . . . in light of the specific context of the case." *Id.* (quoting *Saucier*, 533 U.S. at 201).[3]  "For a right to be clearly established, the contours of the right must

---

[3]"Some panels of the Sixth Circuit have employed a third step requiring the court to determine whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional right." *Grower v. Drury*, 567 F.3d 302, 309 (6th Cir. 2009) (citing *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003); *Sample v. Bailey*, 409 F.3d 689, 696 (6th Cir. 2005)).  However, in excessive force cases, the third step is redundant because the defendant's conduct must be objectively unreasonable to find a constitutional violation under the first step. *Grower*, 567 F.3d at 309 (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  Thus, qualified immunity is a two-step inquiry in excessive force cases. *Grower*, 567 F.3d at 309.

be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (internal citations omitted). While the sequence of this two-step inquiry is often appropriate, it is no longer mandatory. *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).

"Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006) (citing *Barrett v. Steubenville City Schs.*, 388 F.3d 967, 970 (6th Cir. 2004)).

### 1. Fourth Amendment Violation

Because the *Saucier* sequence is appropriate here, we first ask whether, under the facts that Plaintiffs have alleged, a constitutional violation occurred. Specifically, the relevant question is whether Plaintiffs have alleged sufficient facts to show that Defendants violated Plaintiffs' Fourth Amendment rights by using excessive force in the execution of a valid search warrant at Plaintiffs' apartment.

The use of excessive force in the execution of a search warrant constitutes a Fourth Amendment violation. *See Grawey v. Drury*, 567 F.3d 302, 311 (6th Cir. 2009); *Dunn v. Matatall*, 549 F.3d 348, 353 (6th Cir. 2008). To determine whether a constitutional violation based on excessive force has occurred, this Court applies "the objective-reasonableness standard, which depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight." *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir. 2007) (citing *Graham v. Connor*, 490 U.S. 386, 395-96 (1989)). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. "Relevant considerations include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Fox*, 489 F.3d at 236 (quoting *Graham*, 490 U.S. at 396).

In *Michigan v. Summers*, 452 U.S. 692, 705 (1981), the Supreme Court held that "for Fourth Amendment purposes . . . a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." The Court described the rationale for this limited authority as follows:

> In assessing the justification for the detention of an occupant of premises being searched for contraband pursuant to a valid warrant, both the law enforcement interest and the nature of the "articulable facts" supporting the detention are relevant. Most obvious is the legitimate law enforcement interest in preventing flight in the event that incriminating evidence is found. Less obvious, but sometimes of greater importance, is the interest in minimizing the risk of harm to the officers. Although no special danger to the police is suggested by the evidence in this record, the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence. The risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation.

*Id.* at 702-03.

In *Muehler v. Mena*, 544 U.S. 93, 98 (2005), the Supreme Court clarified that "[i]nherent in *Summers'* authorization to detain an occupant of the place to be searched is the authority to use reasonable force to effectuate the detention."

In the instant case, the district court identified at least two open fact questions that bear on whether the officers' use of force in the execution of the search warrant was objectively reasonable under the circumstances: (1) how quickly the officers should reasonably have realized that there were no narcotics in Plaintiffs' apartment, and (2) whether the amount of force that the officers used to secure and detain Plaintiffs was reasonable under the circumstances. In regard to the first question, the district court identified the sub-question of whether the interrogation of Plaintiffs occurred at the same time as the search of the apartment or extended beyond the time when the officers concluded the search and found no drug paraphernalia or activity. The district court found that, if the interrogation extended beyond the time when the officers completed

the search, a question of fact remains for the jury as to whether it was excessive to interrogate Plaintiffs at gunpoint after finding no evidence of drug activity.

With respect to the first question, Plaintiffs allege that Defendants completely ransacked their apartment and did not complete the search and interrogation until approximately an hour after arriving. With respect to the second question, Plaintiffs testified that Defendants continued to hold Plaintiffs at gunpoint and keep them handcuffed throughout the hour long ordeal, despite the fact that the Confidential Operation Plan anticipated no firearms on the premises and that Plaintiffs immediately submitted to and cooperated with the officers.

In *Hill v. McIntyre*, 884 F.2d 271 (6th Cir. 1989), as in the instant case, the plaintiffs brought a lawsuit under § 1983 after the defendants searched the plaintiffs' apartment for narcotics on the basis of a valid search warrant but found no evidence of illegal activity. This Court held that the plaintiffs raised questions of fact for a jury concerning whether the manner in which the defendants conducted a search of the plaintiffs' apartment was reasonable. *Id.* at 277. Specifically, the Court found that the following questions were ones of fact that must be decided by a jury: whether the officers were reasonable in breaking open the front door of the apartment shortly after knocking, whether the officers were reasonable in detaining the occupant of the premises at gunpoint, and whether the extensive nature of the search of the premises was reasonable. *Id.*[4]

---

[4]Defendant Pongracz argues that *Hill* is distinguishable from this case based on six separate grounds. Specifically, Officer Pongracz argues that *Hill* is inapplicable because: (1) in *Hill* there was a question of fact as to whether the officer lied to obtain the search warrant; (2) the police officers in *Hill* searched the wrong home; (3) the occupants of the home in *Hill* were both minors who were either asleep or in bed reading when the officers entered the wrong home; (4) *Hill* was not an excessive force or assault and battery case; (5) there was evidence that at least one officer had suspicions concerning whether the house was a drug house within the first few minutes of the search; and (6) *Hill* did not address whether the officers were entitled to qualified immunity or governmental immunity. (*See* Def. Pongracz's Br. at 31-33). However, distinctions (1), (2), (3), and (5) are irrelevant on their face. As for distinctions (4) and (6), we note that we rely on *Hill* simply to show the types of factual questions that we have said must be decided by a jury before we can make a determination as to whether officers have violated the Fourth Amendment in executing a search warrant. The question of what types of facts a jury must decide to determine whether an officer acts reasonably in the execution of a search warrant is equally relevant here, even though *Hill* is not a qualified immunity or excessive force case.

Defendants go to great lengths to argue that the evidence is undisputed that the interrogation of Plaintiffs did not continue after the search was completed. However, as the district court found:

> Plaintiffs state otherwise, and the deposition testimony presented to the Court does not resolve this question of fact. For example, page 55 of Exibit [sic] D to Defendant Pongracz's underlying Motion for Summary Judgment states that the interrogation took place during the search. However, it does not address whether the interrogation continued beyond the time of the search, as Plaintiffs contend in their response. Plaintiffs state that they were not only detained and handcuffed at gunpoint during the search, but they were kept in a handcuffed position and held at gunpoint until well after the search was completed.

(R.E. 82 at 3).

In addition, the testimony of Mr. and Mrs. Binay, which Defendants claim supports their argument that the search and interrogation happened simultaneously, does not in fact concede Defendants' position. Mr. Binay testified that after he was handcuffed, "I was actually asking this guy what was going on and they just ignore [sic] us. And there is this guy who approached us and asked us to lead us to the dining area. And we were seated there. And I think that was the leader. At that time, he started interrogating us . . ." (R.E. 51 Ex. G at 17). Mrs. Binay testified that after being handcuffed Plaintiffs were "taken to the dining room" and after that the "leader [of the officers] talked to us." (R.E. 51 Ex. I at 50). Neither of these statements supports Defendants' characterization as to the timing of the events that they describe. The only phrase that places these comments into the context of a timeline is Mr. Binay's use of the phrase "[a]t that time." However, there is nothing that indicates that Mr. Binay was referring to a time before the search was completed. While Plaintiff's testimony could have been more explicit, this deposition testimony does not support Defendants' contention that the fact of when the interrogation occurred in relation to the search is undisputed, especially in light of Plaintiffs' allegations that the officers interrogated them after they searched the apartment. Thus, the factual determination of when Defendants conducted the interrogation in relation to the search remains for the jury to

decide before a court can determine whether Defendants' conduct in executing the warrant was objectively reasonable under the circumstances.

Both Defendants have cited to a number of cases in which courts have found the use of handcuffs and guns in detaining suspects not to constitute excessive force. *See, e.g., Neague v. Cynkar*, 258 F.3d 504, 508 (6th Cir. 2001); *Ingram v. City of Columbus*, 185 F.3d 579, 591-92 (6th Cir. 1999); *Crisp v. City of Kenton*, No. 97-3192, 1998 WL 180561, at *5 (6th Cir. 1998); *Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 469 (S.D.N.Y. 2008); *Parsons v. United States*, 360 F. Supp. 2d 1083, 1091 (E.D. Ca. 2004). However, the fact that it is *sometimes* reasonable to use handcuffs and guns when detaining suspects does not support Defendants' argument that the amount of force used *in this case* was objectively reasonable. Whether an exercise of force is excessive will vary depending on the facts and circumstances of the specific case. *See Fox*, 489 F.3d at 236.

The relevant question here is whether the amount of force that the officers used to secure and detain Plaintiffs was objectively reasonable given the circumstances of this search. In this case, Plaintiffs had no criminal record, cooperated throughout the ordeal, posed no immediate threat to the officers, and did not resist arrest or attempt to flee, all of which are factors that tend to weigh against Defendants' contentions regarding the amount of force that was appropriate. *See id. See also McDowell v. Rogers*, 863 F. 2d 1302, 1307 (6th Cir. 1988) (finding "the need for the application of force" to be "nonexistent" when police have already detained suspects who are handcuffed and not trying to flee or hurt anyone); *Robinson v. Solano County,* 278 F.3d 1007, 1015 (9th Cir. 2002) (en banc) (pointing a gun at an unarmed suspect who poses no danger constitutes excessive force); *Baker v. Monroe Twp.*, 50 F.3d 1186, 1193 (3d Cir. 1995) (detaining suspect using guns and handcuffs violated the Fourth Amendment as there was "simply no evidence of anything that should have caused the officers to use the kind of force they are alleged to have used"). Furthermore, the Confidential Operation Plan anticipated no firearms on the premises, and no narcotics were found in the apartment.

Questions remain as to whether Defendants continued to detain Plaintiffs at gunpoint long after the risk of flight and risk to the officers subsided, particularly in light of the rationale behind the limited authority to detain the occupants of a premises during a proper search–to prevent flight and minimize the risk to the officers. *See Hill*, 884 F.2d at 277. Furthermore, questions remain as to whether the officers' wearing of masks during the entry and search, which Plaintiffs claim violates DRANO policy, added to an environment of intimidation and terror such that it contributed to a use of excessive force. A jury must determine these facts before a court can decide whether the amount of force used in executing the detention was excessive under the circumstances. *See id.*

Accordingly, viewing the evidence in the light most favorable to Plaintiffs, we find that Plaintiffs have alleged sufficient facts to show that Defendants' conduct violated the Fourth Amendment.

## 2. Liability of Individual Officers

Having determined that Plaintiffs have alleged sufficient facts to show that Defendants' conduct violated the Fourth Amendment, we must determine whether Plaintiffs have alleged sufficient facts that Defendants Pongracz and Bettendorf were personally involved in the constitutional violations.

Each defendant's liability must be assessed individually based on his own actions. *Dorsey v. Barber*, 517 F.3d 389, 399 n.4 (6th Cir. 2008) (citing *Ghandi v. Police Dep't of the City of Detroit*, 747 F.2d 338, 352 (6th Cir. 1984)). To hold an officer liable for the use of excessive force, a plaintiff must prove that the officer "(1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997) (internal citations omitted). "As a general rule, mere presence at the scene of a search, without a showing of direct responsibility for the action, will not subject an officer to liability." *Ghandi*, 747 F.2d at 352 (internal citations omitted).

### a. Officer Pongracz

Officer Pongracz argues that he did not personally participate in the alleged use of excessive force based on the handcuffing of Plaintiffs, because he did not personally handcuff Plaintiffs or have the opportunity or means to prevent the handcuffing of Plaintiffs. Officer Pongracz also argues that he did not have control over the decision concerning whether Plaintiffs were to be held at gunpoint during the duration of search. According to Officer Pongracz, Lieutenant Menna made both of these decisions.

However, Officer Pongracz admitted to being the leader of the raid and to ordering Mr. Binay to the ground in the hallway of the apartment with his shotgun drawn. In addition, Plaintiffs allege that Officer Pongracz, as the leader of the raid, sanctioned the continued use of force against Plaintiffs throughout the duration of the search and the interrogation. Mr. Binay also testified that the officer with the shotgun was the one who pointed his gun at Plaintiffs throughout the interrogation. Officer Pongracz admitted to carrying a shotgun during the raid, and Officer Bettendorf testified that only one officer would carry a shotgun on a raid. Thus, Plaintiffs have advanced ample evidence that Officer Pongracz held Plaintiffs at gunpoint, at least during some portion of the raid.

Based on these facts, we find that Plaintiffs have alleged sufficient facts to show that there is a disputed issue of material fact as to whether Officer Pongracz was personally involved in the conduct that violated the Fourth Amendment.

### b. Officer Bettendorf

Officer Bettendorf argues that he had no personal involvement in the alleged use of excessive force beyond mere presence at the scene. According to Officer Bettendorf, his role in the raid was the same as Officers Jones and Brown, both of whom were granted qualified immunity in the district court on the basis that they were not involved in the alleged excessive force.

However, the district court found that because Officer Bettendorf was in the room with Plaintiffs during the interrogation and at the time Plaintiffs were handcuffed,

a question of fact remains as to whether he was involved in the constitutional violation. In addition, Office Bettendorf admitted in his deposition testimony to carrying a pistol during the raid, to speaking with Lieutenant Menna in the hallway, and to searching the master bedroom. Thus, there is a question of fact as to whether he was one of the officers pointing a gun at or securing Plaintiffs during some part of the raid. Furthermore, the fact that Defendants wore masks during the raid made it exceedingly difficult for Plaintiffs to identify with precision which officers engaged in which conduct. Thus, Plaintiffs have alleged sufficient facts to show that there is a disputed issue of material fact as to whether Officer Bettendorf was personally involved in the conduct that violated the Fourth Amendment.

### 3. Clearly Established Constitutional Right

After determining that Plaintiffs have raised sufficient facts to support a Fourth Amendment violation, we next ask "whether the right was clearly established . . . in light of the specific context of the case." *Scott*, 550 U.S. at 377 (quoting *Saucier*, 533 U.S. at 201). "For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Feathers*, 319 F.3d at 848 (internal citations omitted). "[A]n action's unlawfulness can be apparent from direct holdings, from specific examples described as prohibited, or from the general reasoning that a court employs." *Id.* at 848. "[I]n an obvious case, [general] standards can 'clearly establish' the answer, even without a body of relevant case law." *Sample v. Bailey*, 409 F.3d 689, 699 (6th Cir. 2005) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)). "[T]here need not be a case with the exact same fact pattern or even 'fundamentally similar' or 'materially similar' facts; rather, the question is whether the defendants had 'fair warning' that their actions were unconstitutional." *Cummings v. City of Akron*, 418 F.3d 676, 687 (6th Cir. 2005) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). Thus, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope*, 536 U.S. at 741. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a

reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.

"This court has held that the right to be free from excessive force is a clearly established Fourth Amendment right." *Neague*, 258 F.3d at 507 (citing *Walton v. City of Southfield*, 995 F.2d 1331, 1342 (6th Cir. 1993)). "As the Supreme Court observed in Saucier, 'there is no doubt that *Graham v. Connor* clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness.'" *Vance v. Wade*, 546 F.3d 774, 784 (6th Cir. 2008) (quoting *Saucier*, 533 U.S. at 201-02). Furthermore, the law is clearly established that the authority of police officers to detain the occupants of the premises during a proper search for contraband is "limited" and that officers are only entitled to use "reasonable force" to effectuate such a detention. *Summers*, 452 U.S. at 705; *Muehler*, 544 U.S. at 98. This Court has long recognized "that the Fourth Amendment permits detention using only 'the least intrusive means reasonably available.'" *Burchett v. Kiefer*, 310 F.3d 937, 946 (6th Cir. 2002) (quoting *United States v. Sanders*, 719 F.2d 882, 887 (6th Cir. 1983)).

Thus, based on the caselaw that existed on January 10, 2007, the date of the alleged use of excessive force in executing the search warrant, Defendants were on notice that their detention of Plaintiffs during the search using means that were more forceful than necessary would constitute a Fourth Amendment violation.

Accordingly, we hold that the district court did not err by finding that Defendants Pongracz and Bettendorf were not entitled to qualified immunity as to Plaintiffs' Fourth Amendment claim.

## II. Governmental Immunity

### A. Jurisdiction

Pursuant to MCR 7.202(6)(a)(v), "an order denying governmental immunity to a governmental party, including a governmental agency, official, or employee" is defined as a "final judgment" or "final order." Thus, we have jurisdiction over interlocutory appeals concerning pendent state law claims of governmental immunity. *See Livermore v. Lubelan*, 476 F.3d 397, 408 (6th Cir. 2007).

### B. Standard of Review

We review a district court's grant of summary judgment *de novo*. *Wuliger*, 567 F.3d at 792. The fact that Defendants' motions for summary judgment were based on governmental immunity does not change our *de novo* standard of review. *See Richerson v. United States*, No. 95-2391, 1996 WL 733136, at *2 (6th Cir. 1996) (citing *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1472 (6th Cir. 1988), *cert. denied*, 488 U.S. 880 (1988)).

### C. Analysis

Under Michigan law, an assault is defined as "an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery." *Grower v. Drury*, 567 F.3d 302, 315 (6th Cir. 2009) (citing *People v. Nickens*, 685 N.W.2d 657, 661 (2004)). A battery is defined as "an unintentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." *Id.* In the instant case, Plaintiffs allege that the officers' continued use of handcuffs and guns in detaining Plaintiffs well beyond the time when there was any potential threat posed to the officers and well beyond the time when the residence was secured constitutes an assault and battery under Michigan law.

To qualify for governmental immunity under Michigan state law for intentional torts such as assault and battery, a governmental employee must establish that: (1) the

employee undertook the challenged acts during the course of his employment and was acting, or reasonably believed he was acting, within the scope of his authority, (2) the employee undertook the challenged acts in good faith or without malice, and (3) the acts were discretionary, rather than ministerial, in nature. *Odom v. Wayne County*, 760 N.W.2d 217, 228 (2008) (citing *Ross v. Consumers Power Co.*, 363 N.W.2d 641, 647 (1984)).

### 1. Officer Pongracz

As discussed above, Officer Pongracz admitted to being the leader of the raid and to ordering Mr. Binay to the ground in the hallway of the apartment with his shotgun drawn. In addition, Plaintiffs allege that Officer Pongracz, as the leader of the raid, sanctioned the continued use of force against Plaintiffs throughout the duration of the search and the interrogation. Mr. Binay also testified that the officer with the shotgun was the one who pointed his gun at Plaintiffs throughout the interrogation. Officer Pongracz admitted to carrying a shotgun during the raid.

In finding that Officer Pongracz was not entitled to state governmental immunity from Plaintiffs' assault and battery claims, the district court found that "while state law allows officers to utilize force to effectuate an arrest and to execute a search warrant, there is a question of fact regarding the necessity of the continued use of weapons and handcuffs once it was determined that drugs were not on the premises." (R.E. 69 at 8). In denying Officer Pongracz's motion for reconsideration, the district court further stated:

> Here, while Defendant's acts were undertaken during the course of his employment, if Plaintiffs' allegations are found to be true, the Court does not find that it was reasonable for Defendant to believe that he was acting within the scope of his authority. There is a question of fact regarding whether it should have been immediately apparent that the Binay residence was not a drug house, and/or how long it should have taken to make that determination. Once such determination was made, it should no longer have been necessary to use the sort of force alleged. These facts, coupled with the Confidential Operation Plan which indicates that there was not an expectation that weapons would be in Plaintiffs' house,

make it difficult to find that Defendant's belief that he was acting within the scope of his authority is reasonable.

(R.E. 82 at 7).

We agree with the district court that, if Plaintiffs' allegations concerning Officer Pongracz's continued use of force against Plaintiffs are true, there is a disputed question of material fact as to whether he reasonably believed that he was acting within the scope of his authority. Accordingly, Officer Pongracz is not entitled to governmental immunity.

### 2. Officer Bettendorf

Likewise, given that Officer Bettendorf may have been involved in the continued use of force against Plaintiffs, including pointing a gun at or securing Plaintiffs during some part of the raid, there is a disputed question of material fact as to whether he reasonably believed that he was acting within the scope of his authority. Accordingly, Officer Bettendorf is not entitled to governmental immunity.

Accordingly, we hold that the district court did not err by finding that Defendants Pongracz and Bettendorf were not entitled to governmental immunity as to Plaintiffs' assault and battery claim.

### CONCLUSION

Because Officers' Pongracz and Bettendorf were not entitled to qualified immunity or governmental immunity, we **AFFIRM** the district court's orders denying summary judgment.