RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 11a0292p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

DARYL J. BENNETT,

         *Plaintiff-Appellee,*

    *v.*

JEREMY KRAKOWSKI; JEFFREY GARRISON;
ALAN LEVEILLE; JOSHUA URBIEL; CITY OF
DEARBORN; JAMES ISSACS,

         *Defendants-Appellants.*

No. 10-2455

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 09-11271—Bernard A. Friedman, District Judge.

Argued: April 27, 2011

Decided and Filed: November 18, 2011

Before: GIBBONS and WHITE, Circuit Judges; OLIVER, Chief District Judge.[*]

_____

## COUNSEL

**ARGUED:** Laurie M. Ellerbrake, CITY OF DEARBORN, Dearborn, Michigan, for Appellants. Chui Karega, Detroit, Michigan, for Appellee. **ON BRIEF:** Laurie M. Ellerbrake, CITY OF DEARBORN, Dearborn, Michigan, for Appellants. Chui Karega, Detroit, Michigan, for Appellee.

_____

## OPINION

_____

SOLOMON OLIVER, JR., Chief District Judge. Defendants-Appellants, Officer Jeremy Krakowski ("Officer Krakowski"), Corporal Jeffrey Garrison ("Corporal

---

[*] The Honorable Solomon Oliver, Jr., Chief United States District Judge for the Northern District of Ohio, sitting by designation.

Garrison"), Corporal Alan Leveille ("Corporal Leveille"), Officer James Issacs ("Officer Issacs"), and Officer Joshua Urbiel ("Officer Urbiel") (collectively, the "Officers" or "Defendants"), appeal the order of the district court denying summary judgment on their claims of qualified immunity in regard to Plaintiff-Appellee, Daryl J. Bennett's ("Plaintiff") claims of excessive use of force under 42 U.S.C. § 1983, and governmental immunity in regard to Plaintiff's claims of assault and battery and gross negligence under state law. For the following reasons, we **DISMISS** Defendants' appeal in regard to qualified immunity and **AFFIRM** the decision of the district court with respect to its denial of summary judgment on Defendants' claim of governmental immunity.

## I. BACKGROUND AND PROCEDURAL HISTORY

### A. Procedural History

On February 27, 2009, Plaintiff filed suit in the Wayne County Circuit Court of Michigan against the Officers and the City of Dearborn. On April 6, 2009, Defendants removed the case to the United States District Court for the Eastern District of Michigan. Plaintiff filed a Motion to Remand the case to Wayne County Circuit Court, which was denied. Plaintiff's Complaint asserts the following claims against all Defendants: state law claims for assault and battery, false arrest and false imprisonment, gross negligence, malicious prosecution, and deprivation of constitutional rights under federal and state law. Specifically, Plaintiff alleges violations of the following state and federal constitutional rights: freedom from the use of excessive and unreasonable force, freedom from deprivation of liberty without due process of law, freedom from summary punishment, freedom to associate with others, and the right to be represented by an attorney. Plaintiff also alleges a violation of Michigan's Freedom of Information Act solely against Defendant City of Dearborn.

On October 22, 2010, the United States District Court for the Eastern District of Michigan granted summary judgment in favor of Defendants on the false arrest/false imprisonment and malicious prosecution claims, and on all constitutional claims against the City of Dearborn. The court denied summary judgment on Plaintiff's claim against

Defendants for excessive force under federal law and his claims for assault and battery and  gross negligence under state law.  The district court also denied the City of Dearborn's summary judgment motion on Plaintiff's claim under Michigan's Freedom of Information Act.

While the district court, as indicated above, granted Defendants' Motion in regard to Plaintiff's false arrest claim, the court found that there was a question of fact as to whether Defendants' conduct in arresting Plaintiff was reasonable.  The district court then applied the objective reasonableness standard to Defendants' conduct to determine if they used excessive force.  The district court found that, while Plaintiff was seeking to evade the Officers by running away from them, there was a question of fact as to whether Defendants' conduct was objectively reasonable under the circumstances. The court found that Plaintiff's and Defendants' accounts of the arrest differed as to what actually happened.  It concluded that, "[a]s the question of excessive force is one for the jury, the Court may not make a further determination regarding the officers' immunity," inasmuch as Plaintiff maintains that he was beaten by officers after he lay on the ground, face down, offering no resistance.  The district court also denied Defendants' motion for summary judgment based on governmental immunity in regard to Plaintiff's claims for assault and battery and gross negligence.

On October 25, 2010, Defendants timely appealed the district court's Order. They argue that the district court erred in denying their motion for summary judgment on the basis of qualified immunity in regard to Plaintiff's excessive force claim. Similarly, they also argue that the district court erred in denying their motion for summary judgment on the basis of governmental immunity in regard to Plaintiff's state law claims for assault and battery and gross negligence.

**B.  Factual History**

On October 22, 2008, Officer Urbiel, of the Dearborn Police Department, was dispatched to 7928 Kentucky in Dearborn to respond to a possible car theft in progress. The complainant, Hassan Abdallah ("Abdallah"), reported that he had observed a 20

year-old black male with a medium build, five feet and ten inches tall, wearing a black leather hooded coat and light colored pants, attempting to enter two vehicles in the area. Abdallah reported that he observed the suspect walk south on Kentucky from Tireman and attempt to enter two vehicles, one of which was broken into the night before. Abdallah's mother also observed the suspect through the windows of her home. At one point, she pounded on her window, causing the suspect to run north on Kentucky back toward Tireman, where he met with another individual.

Officer Urbiel drove in a squad car marked "Dearborn Police Department," to the corner of Kentucky and Tireman to try to locate the suspect that Abdallah described. Officer Urbiel testified that he saw a male wearing a black-hooded coat, walking north on Tireman, with another male, Plaintiff, wearing a dark sweatshirt and dark jeans. Officer Urbiel observed the pair cross Dearborn's north border and enter Detroit. Officer Urbiel then drove around the neighborhood to try and get a better look at them. He noticed them standing in front of a house.

Officer Urbiel radioed the location of the pair to other officers, who came into the area and set up a perimeter. Corporal Garrison, Corporal Gordon Morse ("Corporal Morse"), and Officer Isaacs responded to the scene. Corporal Leveille positioned his car on the corner of Indiana and Belton to assist Officer Urbiel. Corporal Garrison, Corporal Morse, and Officer Isaacs walked down the west side of Belton and approached the house where the pair had been seen. Corporal Garrison testified that once Plaintiff and the suspect saw them, they took off running. Officer Isaacs testified that Plaintiff ignored the Officers' commands and kept running.

Defendants assert that Plaintiff led them on a foot chase for several blocks before Corporal Leveille was able to tackle him using a "bear-hold." Once Plaintiff was brought to the ground, Officer Krakowski and Officer Kostiuk attempted to help Corporal Leveille subdue him. However, they contend that Plaintiff "curled up on the ground, refusing to put his hands up." They maintain that Plaintiff then got on his hands and knees and started crawling, or attempting to crawl away. They state that Plaintiff was moving around so much and keeping his hands underneath his body, that they were

prevented from handcuffing him. Officer Kostiuk asserts that he warned Plaintiff, "Dearborn Police-Stop resisting," but Plaintiff did not heed his warning.

Officer Krakowski, Officer Kostiuk, and Corporal Leveille contend that they attempted to get Plaintiff's arms out from underneath him, but could not do so. They assert that he kept trying to crawl away as they struggled to gain control of his hands. They maintain that they repeatedly told Plaintiff to stop resisting, with Officer Krakowski specifically warning Plaintiff twice, that if he did not stop resisting, he would be tasered. When he continued to resist, Officer Krakowski proceeded to taser Plaintiff in the back. Officer Krakowski, Officer Kostiuk, and Corporal Leveille assert that they still could not pull Plaintiff's arms out from underneath him at this point, and it was not until Officer Isaacs and Corporal Garrison arrived that they were able to handcuff him.

Plaintiff's version of what happened is drastically different in several respects. He states that he was "chilling outside around the porch" of a friend's house for about an hour and a half when he noticed the Dearborn police car going up and down the street. At some point, he went into the backyard of the house to retrieve his iPod. He was back there about a minute before returning, at which point he saw and heard a police dog attacking his friend, Jordan Graham ("Graham"). When questioned by Defendants' counsel as to why he ran and what happened when he encountered the Officers, Plaintiff stated the following in his deposition:

> Q: Why did you run?
>
> A: Because I was scared of the dog.
>
> Q: Was the dog loose or on a leash?
>
> A: I don't know. I think he was on a leash or loose, I really couldn't tell.
>
> Q: Did any police officer order you to stop running?
>
> A: Yeah, that's when I stopped.
>
> Q: So you started running through the Backyard to Indiana to Belton and as soon as a police officer said "stop," you stopped?
>
> A: Yeah. I stopped and I lay down on the grass.

Q: You stopped and laid down?

A: On the ground.

Q: Did he tell you to lay down or did you just lay down?

A: I just laid down.

Q: Why did you do that?

A: I figured the police is chasing me, so I just gave up and laid down.

Q: And then what happened?

A: Then the police came and they started like kneeing me like my back and like punching me. They slammed my face to the ground and they tasered me.

Plaintiff states that he never attempted to strike, nor did he strike any of the Officers. Plaintiff further states that he did not take any aggressive actions toward them, did not have a weapon, and the Officers punched him in the back of the head. Plaintiff also states that, while he was being beaten, he heard an officer say, "we should have let the K-9 bite his ass." Plaintiff maintains that, while he was lying face down on the ground, Officer Krakowski "jumped from his vehicle" and tasered him in the back.

Plaintiff's companion, Graham, stated in his affidavit that he saw "Daryl Bennett running then stop and lay on the ground face down with his hands above his head." Graham stated that while Plaintiff was on the ground, "he was laying face down with his hands above like surrendering." As Plaintiff lay there, Graham stated that he

saw [a] Dearborn police officer punching and kneeing Daryl Bennett. Daryl was not fighting the officers. Daryl did not try to get off the ground, or attempt to punch, kick, or strike the officers as they beat him. While Daryl was still on the ground a Dearborn police officer shot Daryl in the back with a taser.

Plaintiff was arrested for resisting and opposing a police officer and failing to obey the lawful commands of a police officer. He was taken to the Dearborn Police Station, where he stayed overnight. He was released on bond the next day. After his release, he sought and received medical treatment. Ultimately, the charges against Plaintiff were dropped.

## II.  LAW AND ANALYSIS

### A. Removal

Plaintiff argues that the court does not have jurisdiction over this appeal because all of the Defendants did not join in the petition for removal.  He contends that, as a result, the case should have been remanded to the state court for being improvidently removed.

It is undisputed that Plaintiff did not file a cross-appeal raising this issue.  This court has consistently held that the filing of a notice of cross-appeal is jurisdictional. *Turi v. Main St. Adoption Servs., LLP*, 633 F.3d 496, 505 (6th Cir. 2011) ("[t]he requirement to file a cross-appeal is [ ] mandatory, and the plaintiffs' failure to file a notice of cross-appeal divests us of jurisdiction to hear their claims."); *Francis v. Clark Equip. Co.*, 993 F.2d 545, 552 (6th Cir. 1993) ("the filing of a notice of cross-appeal is jurisdictional where an appellee wishes to attack part of a final judgment in order to enlarge his rights or to reduce those of his adversary.")  Since Plaintiff did not file a cross-appeal, this court does not have jurisdiction to hear his claim.  In any event, after Plaintiff filed a motion to remand in the district court, arguing that removal was improper because it was not joined in by all Defendants, all Defendants filed an amended notice of removal.  The City of Dearborn timely filed or joined in the amended notice of removal.  Thus, Plaintiff's claim is without merit.

### B.  Qualified Immunity

Ordinarily, the denial of a motion for summary judgment is an interlocutory ruling, not a "final order" subject to immediate review.  28 U.S.C. § 1291; *Harrison v. Ash*, 539 F.3d 510, 521 (6th Cir. 2008).  However, it is well-established that an order denying qualified immunity to a public official is immediately appealable pursuant to the "collateral order" doctrine, *Harrison*, 539 F.3d at 521, "to the extent that a summary judgment order denies qualified immunity based on a pure issue of law." *Gregory v. City of Louisville*, 444 F.3d 725, 742 (6th Cir. 2006).  This court has stated that "[a] defendant challenging a denial of summary judgment on qualified immunity grounds

must be willing to concede the most favorable view of the facts to the plaintiff for purposes of the appeal." *Thompson v. Grida*, 656 F.3d 365, 367 (6th Cir. 2011) (internal citation and quotation omitted).  Furthermore,

> where the defendant disputes the facts on appeal, the appeal involves the ordinary issue of the existence, or non-existence, of a triable issue of fact. In that situation, the district court's determination that the summary judgment record raises a genuine issue of fact concerning the officials' involvement is not an immediately appealable final decision and this Court lacks jurisdiction.

*Id*. (internal citations omitted).

Plaintiff asserts that we do not have jurisdiction to decide the issue of qualified immunity regarding his § 1983 excessive force claim because Defendants base their claim for immunity on disputed factual findings.  We agree.  While Defendants contend that they base their claim for immunity on issues of law, a review of the record on appeal clearly demonstrates that they are relying on disputed issues of fact.  *See McKenna v. City of Royal Oak*, 469 F.3d 559, 561 (6th Cir. 2006) (finding the court does not have jurisdiction because defendants' qualified immunity arguments "rely exclusively on a disputed version of the facts.").

Defendants argue that they are entitled to summary judgment because no reasonable jury could conclude that they used excessive force against Plaintiff. Defendants contend that Plaintiff "physically prevented [them] from arresting him" and "physically prevented officers from searching him," while also "[making] repeated furtive movements with his hands . . . actively resist[ing] through the entire encounter." Defendants maintain that, based on Plaintiff's behavior, they "used only the amount of force necessary to subdue and handcuff him."  They assert that "until Plaintiff was handcuffed and stopped resisting, they clearly had a reason to be fearful."  They further argue that the use of the taser was not excessive under the circumstances.  Defendants state "[i]n direct response to Plaintiff's physical resistance and his complete refusal to comply with officers' orders and demands, Officer Krakowski resorted to a higher degree of force."

Though both Plaintiff and Defendants acknowledge that Plaintiff initially ran, Defendants fail to take into account the rest of the facts as stated by Plaintiff, such as his non-resistance, and his acquiescence to the Officers' commands that he stop. For purposes of the motion, the Officers do not credit Plaintiff's statement that he surrendered and voluntarily lay on the ground with his arms extended. In arguing that their conduct was reasonable and their use of force was not excessive, they take little, if any, account of the evidence offered by Plaintiff. This court has stated that "[m]ere conclusory statements that the officers construe the facts in the light most favorable to the plaintiff cannot confer jurisdiction upon this Court." *Thompson*, 656 F.3d at 368. Defendants fail to construe the evidence in the light most favorable to Plaintiff, which indicated that Plaintiff, contrary to Defendants' statements, did not resist arrest and obeyed the commands of the Officers. Therefore, because Defendants' arguments regarding their claim that they are entitled to qualified immunity are based on contested facts that are pertinent to that determination, this court does not have jurisdiction to decide this issue.

**C. Governmental Immunity**

*1. Jurisdiction*

Plaintiff also asserts that we do not have jurisdiction to decide the issue of governmental immunity because the denial of governmental immunity is not a final appealable order. Plaintiff's argument is not well-taken. This court has stated that, "[i]n a diversity case or a federal question action involving pendent state claims, we must look to state immunity law to determine whether a denial of immunity based on state law is appealable." *Livermore ex rel Rohm v. Lubelan*, 476 F.3d 397, 407 (6th Cir. 2007). Michigan Court Rule 7.202(6)(a)(v) states that, "an order denying governmental immunity to a governmental party, including a governmental agency, official, or employee" constitutes a "final judgment" or "final order." Thus, the court has jurisdiction to consider Defendants' appeal concerning the denial of governmental immunity on Plaintiff's assault and battery and gross negligence claims. *Livermore*, 476 F.3d at 408. The fact that this court does not have jurisdiction over the qualified

immunity interlocutory appeal does not divest the court of jurisdiction over the appeal regarding governmental immunity under Michigan law. *See Smith v. Cnty. of Lenawee*, 600 F.3d 686, 690 (6th Cir. 2010).

## 2. Standard of Review

A district court's grant of summary judgment is reviewed *de novo*. *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 361 (6th Cir. 2001); *Binay v. Bettendorf*, 601 F.3d 640, 652 (6th Cir. 2010) (same standard of review for governmental immunity) (internal citation omitted).

## 3. Analysis

Defendants contend that the district court erred when it denied their summary judgment motion based on governmental immunity in regard to Plaintiff's state-law claims for assault and battery and gross negligence. The district court's denial of their motion in respect to each claim was based on its determination that there was a material issue of fact regarding whether Defendants' use of force was necessary.

Michigan law provides governmental employees acting on behalf of a governmental agency with immunity from tort liability for injuries they cause during the course of their employment if all of the following are met: (1) the employee is acting or reasonably believes he or she is acting within the scope of his or her authority; (2) the governmental agency is engaged in the exercise or discharge of a governmental function; and (3) the employee's conduct "does not amount to gross negligence that is the proximate cause of the injury or damage." Mich. Comp. Laws § 691.1407. "Gross negligence" is "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." Mich. Comp. Laws § 691.1407(7)(a). An employee's conduct is "the proximate cause" of an injury if it is "the one most immediate, efficient, and direct cause preceding an injury." *Robinson v. City of Detroit*, 613 N.W.2d 307, 317 (Mich. 2000).

*a. Assault and Battery*

Defendants contend that they are entitled to summary judgment on Plaintiff's assault and battery claims for the same reasons they were entitled to summary judgment on his excessive force claim, and because of the deference they are entitled to under Michigan law.  If a police officer lawfully arrests an individual, he may use reasonable force if that individual resists arrest.  *Delude v. Raasakka*, 215 N.W.2d 685, 688-89 (Mich. 1974); *see VanVorous v. Burmeister*, 687 N.W.2d 132, 141 (Mich.  App. 2004).  However, an officer who uses excessive force may be held liable for assault and battery. *See White v. City of Vassar*, 403 N.W.2d 124, 127 (Mich. App. 1987).  Under Michigan law, a police officer may be subject to tort liability "if the officer has utilized wanton or malicious conduct or demonstrated a reckless indifference to the common dictates of humanity."  *Dickey v. Fluhart*, 380 N.W.2d 76, 79 (Mich. App. 1985).  Michigan courts have held that police officers, "especially when confronting situations fraught with potential danger, are to be given great discretion in determining what type of action ought to be taken and their determination is to be considered discretionary-decisional and thus immune from liability."  *Alexander v. Riccinto*, 481 N.W.2d 6, 9 (Mich.  App. 1991).  In determining whether an officer is entitled to governmental immunity, the court must decide whether there is a genuine issue of material fact as to whether the use of force was objectively reasonable.  This is the same analysis that the court uses for a claim under 42 U.S.C. § 1983.  *Landis v. Baker*, 297 F. App'x 453, 466 (6th Cir. 2008) (stating analysis is the same).

The appropriate standard to use in analyzing an excessive force claim brought under §1983 "is determined by identifying the specific constitutional right infringed by the challenged application of force." *Lustig v. Mondeau*, 211 F. App'x 364, 369 (6th Cir. 2006) (citing *Graham v. Connor*, 490 U.S. 386, 393-94 (1989)).  All claims that police officers used excessive force in the course of an arrest should be analyzed under the Fourth Amendment and its "objective reasonableness" standard.  *Graham*, 490 U.S. at 397.  Under this standard, the court must take into consideration the totality of the circumstances.  *Id*. at 396–97.  In applying the objective reasonableness test, the court

is required to pay "careful attention to the facts and circumstances of each particular case, including the [1] severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396. Furthermore, the "reasonableness" of a particular use of force by law enforcement is objective, and "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. This court has stated that "we must avoid substituting our personal notions of proper police procedure for the instantaneous decision of the officer at the scene." *Boyd v. Baeppler*, 215 F.3d 594, 602 (6th Cir. 2000). In addition, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97. The Supreme Court has stated that "[i]f an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed." *See Saucier v. Katz*, 533 U.S. 194, 205 (2001), *overruled on other grounds*, *Pearson v. Callahan*, 555 U.S. 223 (2009).

Plaintiff, therefore, must make a showing that the Officers' use of force was objectively unreasonable. The Officers argue that their conduct did not amount to excessive force under the deferential standard of *Graham*.[1] The district court held that Plaintiff made a sufficient showing to create a genuine issue of fact, preventing the granting of summary judgment in favor of Defendants.

Plaintiff maintains that he did run initially, out of fear of the dog, but came to a stop after hearing the Officers' commands for him to do so. He testified that he then lay on the ground, with his arms extended. As indicated previously, he stated that the Officers proceeded to punch him in the head, knee him in the back, push his face into the ground, and use a taser on him while he lay on the ground. Based on this account,

---

[1]Defendants do not separate their analysis based on the conduct of each Defendant, but instead group them together.

Plaintiff was not resisting arrest and no force was required to restrain him. Furthermore, while the Officers indicate that Plaintiff resisted, they do not maintain that Plaintiff assaulted them or took any aggressive action against their person. Further, no weapon was found on him.

For the purposes of an interlocutory appeal, this court must view the facts in the light most favorable to Plaintiff. When doing so, this court cannot conclude that the Officers' conduct was reasonable as a matter of law. This court has stated that, "[a]bsent some compelling justification–such as the potential escape of a dangerous criminal or the threat of immediate harm–the use of [a stun gun] on a non-resistant person is unreasonable." *Kijowski v. City of Niles*, 372 F. App'x 595, 600 (6th Cir. 2010).

Defendants rely on *Devoe v. Rebant*, No. 05-71863, 2006 WL 334297 (E.D. Mich. Feb. 13, 2006), in arguing that their use of the taser was neither gratuitous nor excessive. In *Devoe*, an officer used a taser on a handcuffed, but uncooperative, suspect's lower back when he failed to comply with police commands to get into the police car, which the court found was not excessive force. *Id*. However, that case is readily distinguishable, as the suspect was hostile and uncooperative, and there was no genuine issue of material fact regarding whether Devoe argued with the officers and resisted their commands to enter the police car. *Id*. at **6-7. In this case, based on Plaintiff's version of the facts, he offered no resistance to the Officers and obeyed their commands.

Defendants contend that *Wylie v. Overby*, No. 05-CV-71945-DT, 2006 WL 1007643 (E.D. Mich. Apr. 14, 2006), also demonstrates that their use of the taser was not excessive force. The court in *Wylie* found that use of the taser was not excessive force because of the plaintiff's assaultive tactics in resisting arrest and his attempts to evade arrest. *Id*. at *7. Again, this case is distinguishable. The *Wylie* court stated that the defendants' use of force was reasonably necessary to subdue a person who had assaulted them and resisted their efforts to arrest him. In this case, according to Plaintiff, he voluntarily lay on the ground with his arms extended. This was corroborated by the testimony of Graham. Furthermore, while the Officers indicate that Plaintiff resisted

them, they do not maintain that Plaintiff assaulted them or took any aggressive action against their persons.

In addition, Defendants rely on *Alexander v. City of Shelby Twp.*, No. 07-cv-14741, 2009 WL 3241974 (E.D. Mich. Oct. 8, 2009), which is also distinguishable. There, the court found an officer's use of a taser was not gratuitous or excessive force. *Id*. at *2. The officer used the taser after the suspect had shown a belligerent attitude, threatened officers following his arrest, and ignored the repeated requests of the officer to enter the patrol car. *Id*. In contrast, Defendants never asserted that Plaintiff was belligerent or threatening toward them, or was actively resisting arrest in the ways the suspect was in *Alexander*. Furthermore, Plaintiff's version of the facts clearly contradicts any notion that he was resisting the Officers.

Although Plaintiff's account was disputed by Defendants, it was not "blatantly contradicted" and "utterly discredited by the record," such that "no reasonable jury could believe it." *Landis v. Phalen*, 297 F. App'x 400, 405 (6th Cir. 2008) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Therefore, the district court properly concluded that there was a genuine issue of material fact with regard to whether Defendants' actions were objectively reasonable under the circumstances of the case. Thus, summary judgment was properly denied. Accordingly, this court affirms the district court's denial of summary judgment on Defendants' governmental immunity claim in regard to Plaintiff's assault and battery claims.[2]

### b. Gross Negligence

Finally, the court must determine whether Plaintiff has produced sufficient evidence to raise a genuine issue of material fact as to whether the Officers' conduct amounted to gross negligence. *See Maiden v. Rozwood*, 597 N.W.2d 817, 824-27 (Mich. 1999). Accepting Plaintiff's version of the facts as true and drawing all reasonable inferences in his favor, he voluntarily laid on the ground with his arms extended upon

---

[2]Defendants also contend that their claim for governmental immunity in regard to the assault and battery claim can be decided on a factual basis, as well as on the basis of whether the court committed a legal error. However, they provide no support for this argument.

hearing the Officers' command to stop.  While on the ground, and not resisting, the Officers kicked, kneed, and tasered him.  Reasonable minds could thus conclude that the Officers' conduct was so reckless as to demonstrate a substantial lack of concern for whether Plaintiff would be injured.

Defendants maintain that *Maiden* supports their position because in that case conduct as egregious as using an unapproved restraint technique on a patient in a mental hospital, that caused the patient to asphyxiate to death, did not constitute gross negligence.  They argue by analogy that their conduct was not grossly negligent in this case.  However, the facts and circumstances in this case are distinguishable from those in *Maiden*.  The decedent in *Maiden* was out of control and posed a serious danger to himself and others.  597 N.W.2d at 826.  The same cannot be said in the instant case; reasonable minds could conclude that Plaintiff was not dangerous and offered no resistance.  Consequently, there is a question of fact as to whether Defendants' conduct was so reckless as to demonstrate a substantial lack of concern as to whether an injury resulted.  Therefore, this court AFFIRMS the district court's denial of summary judgment to Defendants on the basis of governmental immunity in regard to Plaintiff's gross negligence claim.

### III.  CONCLUSION

For the foregoing reasons, we **DISMISS** Defendants' appeal in regard to qualified immunity and **AFFIRM** the decision of the district court with respect to its denial of summary judgment on Defendants' claim of governmental immunity.