NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0400n.06

No. 10-2567

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| LORI MARIE McCOLMAN, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellant, | ) | *Apr 12, 2012* |
| | ) | LEONARD GREEN, Clerk |
| v. | ) | |
| | ) | |
| ST. CLAIR COUNTY, ST. CLAIR | ) | |
| COUNTY SHERIFF'S DEPARTMENT, | ) | ON APPEAL FROM THE UNITED |
| and SERGEANT HERNANDEZ, | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF MICHIGAN |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DEPUTY GREG DOAN, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

Before: GIBBONS, GRIFFIN and DONALD, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Lori McColman, a double amputee

with below-the-knee prosthetics, sued St. Clair County, its Sheriff's Department, and two

St. Clair County police officers alleging that the officers used excessive force and were

grossly negligent in connection with her arrest for drunk driving. McColman brought claims

for deprivation of her civil rights and use of excessive force in violation of 42 U.S.C. § 1983;

assault and battery; and gross negligence pursuant to Michigan Compiled Laws § 691.1407.

After the parties stipulated to the dismissal of all defendants except St. Clair County

Sheriff's Deputy Greg Doan, Doan moved for summary judgment. The district court granted

Doan's motion, concluding that Doan did not use excessive force when he pulled McColman into the back seat of his police vehicle after her arrest and that, even if he did, he was entitled to qualified immunity. The district court further held that Doan was not grossly negligent in placing McColman sideways in the back seat of the police vehicle and that Doan was not grossly negligent when he left McColman sitting on a gurney in the hospital emergency room under the supervision of another officer. McColman appeals. For the reasons that follow, we affirm the judgment of the district court.

**I.**

Lori McColman, a double, below-the-knee amputee who ambulates with prosthetics, was arrested for drunk driving on August 28, 2008. The week before her drunk driving arrest, police officers were called to the house of McColman's husband, Donald McColman, Jr., to respond to a domestic dispute. Doan and Sergeant Joseph Hernandez responded to the call and interviewed McColman and her husband. From these interviews, they learned that McColman had set the couple's marriage certificate on fire and had pushed her husband, and that he knocked her down, causing her to fall, hit her head, and black out. McColman's husband alleges that she only pretended to black out, at which point he called 9-1-1. The officers separated the couple for the night, sending McColman to her own home.

In the early morning hours of August 28, 2008, Doan observed McColman's car weaving between lanes, pulled her over, and gave her several field sobriety tests. McColman performed poorly on at least one of these tests. Doan then administered a breathalyzer test which revealed that McColman's blood alcohol level was .18, which was over the legal limit. He told McColman that she was being arrested for drunk driving and directed her to place her hands behind her back. Doan then handcuffed McColman.

2

McColman testified that Doan placed the handcuffs on her "[w]ay too tight[ly,]" causing her to scream out in pain, "I'm hurting. You're hurting me, you're hurting me." She further testified that the handcuffs were so tight that they were cutting into the skin on her wrists, but Doan did not adjust the handcuffs in response to her complaint. Doan testified that he checked the tightness of the handcuffs by inserting a finger along McColman's wrist bone, determined that they were not too tight, and left them as they were.

Doan then sat McColman on the back seat of the police car, and asked her to scoot into the vehicle. McColman told Doan she couldn't "scoot" into the back seat because she needed her hands to propel her. Doan then walked around to the other side of the car, opened the door, grabbed McColman by her upper arms, and pulled her across the seat and into the car. McColman testified that she was "yanked . . . across the seat" in a manner that "caused excruciating pain." When Doan pulled McColman into the back seat, one of her prosthetic legs fell off, but Doan reattached it to her residual limb. At the time of her arrest, McColman weighed approximately 170 pounds.

Doan testified that he left McColman sitting sideways on the back seat because he thought that she would have difficulty getting her prosthetic legs around and underneath the cage of the vehicle. Doan began to drive McColman to the jail, but as a result of her sitting sideways on the back seat, when Doan made a right turn, McColman fell over and hit her head on the car seat or door. McColman testified that she blacked out from the extreme pain she was feeling in her wrists—from the handcuffs—and from hitting her head. Doan heard a thud in the back seat, stopped the police car, and checked on McColman. McColman was breathing and moving, but not talking. Because McColman was unresponsive, Doan took her to the hospital.

Doan radioed for backup to meet him at the hospital, and Deputy Martin Stoyan was dispatched to assist Doan. Doan testified that he radioed for backup to avoid having to leave McColman unattended while he was doing paperwork at the hospital. When they reached the hospital, Doan and Stoyan helped McColman onto a gurney and an orderly took her into an examination room. McColman testified that she was then left unattended in the examination room with the police officers standing outside the door of the room.

At some point, McColman fell off the gurney and hit her right elbow on the floor. She testified that one of her prosthetic legs was slipping off, and, as she was trying to hold it on with her other leg, she fell off the gurney after she lost her balance due to her hands being handcuffed behind her back.

McColman testified that after her fall, she experienced excruciating pain in her wrists and hands, which were going numb, and in her right elbow. Despite her complaints of pain, McColman was medically cleared to go to jail, and Doan transported her there. McColman's handcuffs were only removed when she reached the jail.

McColman saw two doctors in the aftermath of the arrest, one of whom testified that her pre-existing carpal tunnel syndrome was exacerbated as a result of the way she was handcuffed.

## II.

Doan moved for summary judgment, and the district court held a hearing on the motion on September 29, 2010.[1] At the hearing, Doan argued that McColman had never

---

[1]Prior to the hearing, the parties stipulated to the dismissal with prejudice of all defendants except Doan, and to the dismissal of Count IV of the Complaint, which alleged that St. Clair County and the St. Clair County Sheriff's Department violated McColman's civil rights in violation of 42 U.S.C. § 1983 by failing to properly supervise, monitor, and train their police officers and by

pled a claim that Doan used excessive force in handcuffing her. Although her complaint contained allegations of excessive force, it did not allege that Doan subjected her to excessive force by handcuffing her too tightly. The court agreed that there was no excessive force handcuffing claim pled in the complaint and that such a claim was therefore not before the court. McColman argued that Doan was on notice, through discovery, that McColman was pursuing an excessive force claim related to her handcuffing and orally moved to amend the complaint to allege this claim. The district court declined to grant the motion orally, directing McColman's counsel to file a motion if he wished to amend the complaint. McColman's counsel indicated that he would move for leave to amend. However, more than one month later, when the district court granted Doan's motion for summary judgment, McColman's counsel still had not moved for leave to amend the complaint.

In its opinion granting Doan's motion for summary judgment, the district court held that McColman's excessive force handcuffing claim was not before the court; that Doan did not use excessive force when he pulled McColman across the back seat of the police car, and that even if he did, he was entitled to qualified immunity; that Doan was not grossly negligent when he situated McColman sideways in the back seat or when he left McColman under Stoyan's supervision at the hospital; and that Doan was entitled to governmental immunity on the state law assault and battery claims. Accordingly, the district court entered summary judgment in Doan's favor. McColman appealed but abandoned her assault and battery claims on appeal.

**III.**

---

establishing a pattern and practice of violating their citizens' constitutional rights.

5

We review a district court's grant of summary judgment *de novo*. *Alspaugh v. McConnell*, 643 F.3d 162, 168 (6th Cir. 2011). "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, 'show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law.'" *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010) (quoting Fed. R. Civ. P. 56(c)). The moving party bears the burden of proving that no genuine issue of material fact exists, but it can discharge that burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (internal quotation marks omitted). In reviewing a summary judgment motion, we view the evidence and the inferences therefrom "in the light most favorable to the non-moving party." *Id.* (citing *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

**A.**

McColman argues that the complaint properly pled an excessive force claim based on handcuffing. We do not agree.

"[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks and alteration omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has

6

alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 1950 (internal quotation marks and alteration omitted).

McColman cites paragraphs 10–11 and 22–23 of her complaint as those that contain sufficient factual and legal allegations to plead her excessive force handcuffing claim. Paragraph 10 states, in full, "That the officers determined that an arrest should be made for operating while intoxicated. The Plaintiff was handcuffed, hands behind her back, and then ordered to get into the police vehicle." (R. 1, at ¶ 10.) Paragraph 11 merely alleges that because McColman is a double amputee she could not get into the police car "without assistance while her hands were handcuffed behind her back." (*Id.*, at ¶ 11.) These paragraphs describe the fact that McColman was handcuffed, but nothing in these paragraphs can be construed as an allegation that Doan used excessive force in placing handcuffs too tightly on McColman's wrists.

Paragraphs 22 and 23 of the complaint allege that Doan violated 42 U.S.C. § 1983 and the Constitution by using excessive force and that a reasonable officer in his position would have known he was violating McColman's constitutional rights. (*Id.*, at ¶¶ 22–23.) These paragraphs do not even mention handcuffing but merely recite the legal elements of an excessive force claim.

The well-pleaded facts of McColman's complaint do not permit an inference that Doan violated 42 U.S.C. § 1983 by using excessive force in handcuffing McColman too tightly. Accordingly, the district court correctly concluded that McColman failed to plead an excessive force handcuffing claim.

Further, the handcuffing claim was not tried by consent, as McColman argues. Federal Rule of Civil Procedure 15(b)(2) provides:

> When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

By its plain terms, Rule 15(b)(2) only applies to claims that are tried, and this case was disposed of on summary judgment. Further, Doan did not consent to trying the handcuffing claim—he *objected* to the claim in both his motion for summary judgment and at oral argument on that motion. *Cf. Siler v. Webber*, 443 F. App'x 50, 58 (6th Cir. 2011) (holding that an issue cannot be tried by the parties' consent pursuant to Rule 15(b)(2) where one of the parties opposes trial by moving for summary judgment).

The fact that Doan would not have been prejudiced or surprised by an amendment is irrelevant, given that McColman never moved for leave to amend her complaint. The district court properly declined to consider a claim that was not pled.

**B.**

McColman next argues that the way in which Doan pulled her across the back seat of the police vehicle constituted excessive force in violation of 42 U.S.C. § 1983. We conclude that Dona's use of force was reasonable.

The Fourth Amendment prohibits officers from using excessive force in the course of making an arrest. *Graham v. Connor*, 490 U.S. 386, 394–95 (1989). "To determine whether a constitutional violation based on excessive force has occurred, this Court applies the objective-reasonableness standard, which depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight." *Binay*, 601 F.3d at 647 (internal quotations marks omitted).

Factors relevant to the reasonableness inquiry include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

As we have explained:

> Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chamber, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Dunigan v. Noble*, 390 F.3d 486, 493 (6th Cir. 2004) (emphasis omitted) (quoting *Graham*, 490 U.S. at 396–97).

In granting Doan's motion for summary judgment, the district court noted that McColman was arrested for driving while under the influence of alcohol, "an unquestionably serious crime which can, under certain circumstances, lead to a volatile situation." The court acknowledged that McColman did not actively resist arrest and that the manner in which Doan pulled her into the car caused her prosthetic leg to fall off and caused bruising on her arms. However, the district court concluded that Doan's pulling McColman into the back seat was not objectively unreasonable because his previous encounter with her after her domestic dispute apprised him of her aggressive behavior, and he had to use some force to get a woman of her weight into the police vehicle. Doan did not use "gratuitous violence" or "gratuitous force" to get McColman into the car. The court also concluded that even if Doan's use of force was objectively unreasonable, he was entitled to qualified immunity.

9

The district court's analysis is sound. Doan knew that McColman had previously set a fire in her husband's home, suggesting she was inclined toward dangerous behavior when she was upset. He also knew that she had been driving while intoxicated. The severity of the crime justified keeping McColman in handcuffs after she was arrested, especially given Doan's knowledge that McColman could present a threat to the safety of others. *See Graham*, 490 U.S. at 396. Thus, Doan's decision not to remove McColman's handcuffs was objectively reasonable. McColman told Doan she could not scoot into the back seat of the police car without the use of her hands. Thus, Doan, having made a reasonable decision not to remove McColman's handcuffs, had to apply *some* force to get her into the back seat so that he could close the door and transport her to jail. *See Graham*, 490 U.S. at 396 (holding that a government officer has the right to use some degree of physical coercion to effect an arrest). Grabbing her by her upper arms and pulling McColman across the seat was not a gratuitous use of force, even if it did result in some minor bruising to McColman's arms. *See Miller v. Sanilac Cnty.*, 606 F.3d 240, 252 (6th Cir. 2010) ("In determining whether there has been a violation of the Fourth Amendment, we consider not the 'extent of the injury inflicted' but whether an officer subjects a detainee to 'gratuitous violence.'" (quoting *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 407 (6th Cir. 2009))). Doan applied force sufficient, but not greater than necessary, to get McColman into the vehicle without removing her handcuffs. Accordingly, Doan did not use excessive force in pulling McColman across the back seat of the vehicle.

## C.

McColman next argues that the district court erred in holding that Doan was not grossly negligent in placing McColman in the back seat of the police vehicle in a manner

10

that allowed her to fall and hit her head when he turned a corner. She also argues that the district court erred in concluding that Doan was not grossly negligent in leaving her unattended on the gurney at the hospital, from which she fell while she was trying to keep one prosthetic leg on with the other.

Under Michigan's Governmental Immunity Act, Mich. Comp. Laws § 691.1407, "a governmental employee is not liable in tort for personal injuries so long as the employee's 'conduct does not amount to gross negligence that is the proximate cause of the injury or damage.'" *Oliver v. Smith*, 715 N.W.2d 314, 317 (Mich. Ct. App. 2006) (quoting Mich. Comp. Laws § 691.1407(2)(c)). Under Michigan law, a police officer may be held liable in tort only if "the officer has utilized wanton or malicious conduct or demonstrated a reckless indifference to the common dictates of humanity." *Bennett v. Krakowski*, __ F.3d __, No. 10-2455, 2011 WL 5604055, at *6 (6th Cir. Nov. 18, 2011) (internal quotation marks omitted). Further, tort liability will not lie unless the officer's conduct "is *the* proximate cause of the injury or damage." *Livermore ex rel Rohm v. Lubelan*, 476 F.3d 397, 408 (6th Cir. 2007) (internal quotation marks omitted). "[T]he Michigan Supreme Court [has] defined 'the proximate cause' under § 691.1407(2)(c) to mean 'the one most immediate, efficient, and direct cause preceding an injury.'" *Id.* (quoting *Robinson v. City of Detroit*, 613 N.W.2d 307, 317 (Mich. 2000)).

Viewing the facts in the light most favorable to McColman, Doan was not grossly negligent in placing McColman sideways in the back seat of the police car. Doan placed McColman sideways because he believed she would have difficulty getting her prosthetic legs underneath the cage if he turned her facing forward. McColman did not tell Doan she was unstable in the position in which he situated her. There is no evidence in the record that

11

Doan was driving at an excessive rate of speed or recklessly when McColman fell over and hit her head.

Doan's response when McColman hit her head undermines any claim that Doan's conduct was "wanton or malicious . . . or demonstrated a reckless indifference to the common dictates of humanity." *Bennett*, 2011 WL 5604055, at *6 (internal quotation marks omitted). When Doan heard a thud in the back seat, he stopped the police car and checked on McColman. McColman was breathing and moving but not talking. Doan immediately took McColman to the hospital because she had fallen over and was unresponsive. At most, Doan's failure to anticipate that McColman would fall over and hit her head because she was positioned sideways was garden-variety negligence, not gross negligence. Accordingly, the district court correctly concluded that Doan was not grossly negligent in placing McColman sideways in the back seat of the police car and that he was therefore entitled to governmental immunity.

Similarly, Doan was not grossly negligent in leaving McColman under Stoyan's supervision when he went to fill out hospital paperwork and paperwork necessary to obtain a warrant for a blood draw. Doan anticipated that he would need backup at the hospital, called for backup, and was met at the hospital by Stoyan. McColman testified that she was left unattended in the examination room with the police officers standing outside the door of the examination room. At some point, McColman fell off the gurney and hit her right elbow on the floor. McColman testified that one of her prosthetic legs was slipping off, she was trying to hold it on with her other leg, and she fell off the gurney after she lost her balance due to her hands being handcuffed behind her back.

12

Crediting McColman's version of events, as we must at the summary judgment stage, Doan is still entitled to governmental immunity because Doan exercised due care in asking Stoyan to supervise McColman while he filled out paperwork. Even if Stoyan failed to stay in the room with McColman, and she was therefore left unattended, it was reasonable for Doan to ask another officer to supervise an arrestee while he could not. There is no evidence in the record that Doan knew or should have known that Stoyan would not watch McColman at all times. On these facts, Doan did not engage in conduct that was "wanton or malicious . . . or demonstrated a reckless indifference to the common dictates of humanity." *See Bennett*, 2011 WL 5604055, at *6 (internal quotation marks omitted).

Moreover, Doan's actions were not the proximate cause of McColman's fall and consequent injury. *See* Mich. Comp. Laws § 691.1407(2)(c). According to McColman's own testimony, she only fell because she was trying to keep one prosthetic leg on with the other, and lost her balance because her hands were handcuffed behind her back. The most direct cause of McColman's injury was her decision to use one of her prosthetic legs to try to keep on the other, which was falling off. Because McColman's actions, not Doan's, were the most direct cause of her fall and injury, Doan was entitled to governmental immunity. *See Livermore*, 476 F.3d at 408.

## IV.

For the foregoing reasons, we affirm the district court's judgment.

13