904 F.2d 331
 52 Fair Empl.Prac.Cas. 1657,
54 Empl. Prac. Dec. P 40,058, 58 USLW 2713,
60 Ed. Law Rep. 1085
 EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,
Robert Patrick Roesser, Intervenor-Appellant,
v.
UNIVERSITY OF DETROIT and University of Detroit Professors
Union, Defendants-Appellees.
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellant,
Robert Patrick Roesser, Intervenor,
v.
UNIVERSITY OF DETROIT and University of Detroit Professors
Union, Defendants-Appellees.
 Nos. 89-1084, 89-1226.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 1, 1989.
Decided April 17, 1990.
Rehearing and Rehearing En Banc Denied
May 31, 1990.
 
 Samuel A. Marcosson (argued), E.E.O.C., Office of the General Counsel, Washington, D.C., Mimi M. Gendreau, Equal Employment Opportunity Office, Detroit Dist. Office, Detroit, Mich., for plaintiff.
 David E. Kempner, Keller, Thomas, Schwarze, Schwarze, DuBay & Katz, Detroit, Mich., Bruce N. Cameron (argued), Nat. Right to Work Legal Defense Foundation, Springfield, Va., for intervenor-appellant.
 Bruce R. Lerner, Peter O. Shinevar (argued), Robert H. Chanin, Bredhoff & Kaiser, Washington, D.C., David P. Smith (argued), Bloomfield Hills, Mich., Eli Grier, Levin, Levin, Garvett & Dill, Southfield, Mich., for defendants-appellees.
 Before MARTIN and NORRIS, Circuit Judges, CONTIE, Senior Circuit Judge.
 ALAN E. NORRIS, Circuit Judge.
 
 
 1
 Under section 701(j) of the Civil Rights Act, 42 U.S.C. Sec. 2000e(j), an employer must reasonably accommodate an employee's religious needs unless the employer demonstrates that such an accommodation would result in undue hardship. The issue in this appeal is whether an employer satisfies this statutory duty by offering an accommodation which addresses but one part of the conflict between the employee's employment obligations and sincere religious belief. The district court concluded that an employer could satisfy this obligation by proposing an accommodation which only addressed one aspect of the conflict, despite the fact that the employee was still required to compromise an essential element of a sincerely held religious belief. Because the district court erred in holding that the partial accommodation was reasonable as a matter of law, this case must be remanded to determine whether there is any accommodation, short of undue hardship, which will completely resolve the conflict at issue.
 
 I.
 
 2
 Intervenor-appellant Robert Patrick Roesser is an electrical engineer who holds a Ph.D. degree. He was hired by defendant University of Detroit as an assistant professor of electrical engineering at the beginning of the 1979-1980 academic year.
 
 
 3
 The university, a private institution affiliated with the Society of Jesus (Jesuits), is party to a collective bargaining agreement with defendant University of Detroit Professors Union. The union is affiliated with both the Michigan Education Association ("MEA") and the National Education Association ("NEA"). By internal union arrangement, most of the fees collected by the union are passed along to the MEA and the NEA.
 
 
 4
 Article 3.2 of the collective bargaining agreement, a typical "agency shop" clause, requires all employees represented by the union to either join the union or pay to the union, as a condition of employment, a service fee equal in amount to union dues. After he began teaching at the university, Roesser refrained from joining the union but authorized the union to deduct the agency fees from his paycheck. However, Roesser withdrew his authorization for payroll deductions when he discovered that the NEA and MEA had campaigned to protect women's rights of choice respecting abortions,[1] a position inconsistent with his own religious convictions.[2]
 
 
 5
 Once the MEA's position became known to him, Roesser advised the union that his religious beliefs were incompatible with the union's position. He maintained that his religious beliefs conflict with the agency shop requirement, since they prevent him from supporting financially any organization that promotes abortion, and constrain him from associating in any way with an organization that promotes abortions. Because his religious beliefs were incompatible with either financial support or association with the MEA and NEA, Roesser refused to pay any of his agency fees. However, he offered either to pay an amount equal to his entire agency fee to charity or to remit that portion of his fee which was allocated solely to the union's local responsibilities and pay the balance to a charitable organization. The union rejected both offers.
 
 
 6
 When the university refused to consider the union's request to terminate Roesser until it first offered to accommodate his religious beliefs, the union president, Maryjo Nichols, sent a letter to Roesser. Ms. Nichols acknowledged that the union was aware of Roesser's sincere religious belief, and made this proposal:
 
 
 7
 [W]e will reduce the agency service fee required of you by an amount proportional to that percentage of the MEA budget which is even remotely connected with the alleged support of issues to which you take exception. Your agency service fee would therefore be reduced by $21.08 for the 1983-84 academic year. (Please see the enclosed reduced service fee calculation worksheet.) Similarly, your service fee would be reduced by an additional $7.78 based on NEA budget figures.
 
 
 8
 Roesser rejected the union's proposed accommodation and explained his decision as follows:
 
 
 9
 Regardless of the amount of the fee that I might pay, a percentage as estimated will be used to support issues to which I object. The choice I must make is to either pay nothing, in which case no support goes to objectionable issues, or to pay a reduced amount, in which case a percentage goes to the support of objectionable issues. Since I believe that abortion is absolutely wrong I must choose the course that minimizes the support of it. The gravity of this issue is so great that I must consider my job expendable.
 
 
 10
 The second reason I cannot accept the offer is that the support of objectionable issues is so intertwined throughout MEA/NEA that it cannot be reasonably separated. This is clearly demonstrated by the indicated calculation for service fee reduction supplied by MEA. It calls out at least 26 items which range widely over their operations. The objectionable issues are supported not only by the budgeted amounts but also by the weight and influence of the entire MEA and NEA. There is just no dealing with something that is inherently wrong.
 
 
 11
 Concluding that the union had done all that it was required to do, the university informed Roesser that he was being terminated.
 
 
 12
 Roesser subsequently filed an administrative complaint with the Equal Employment Opportunity Commission ("EEOC") against the university and the union. The EEOC found that there was reasonable cause to believe that a violation had occurred. When its attempt at conciliation failed, the EEOC filed suit against the university and the union in the United States District Court for the Eastern District of Michigan. The complaint alleged that the university engaged in an unlawful employment practice in violation of sections 703(a) and (c) of Title VII, 42 U.S.C. Secs. 2000e-2(a) and (c), because it discharged Roesser because of his sincerely held religious beliefs. Roesser's request to intervene was granted.
 
 
 13
 The district court determined that defendants were entitled to summary judgment since the union's rebate accommodation was reasonable as a matter of law and that, in any case, Roesser's proposals would work an undue hardship upon the union. 701 F.Supp. 1326. It is from this decision that Roesser and the EEOC now appeal.
 
 II.
 
 14
 The district court granted summary judgment after concluding that there were no genuine issues of material fact which remained for trial. This court, therefore, must now apply a de novo standard of review, making all reasonable inferences in favor of the non-moving party to determine if a genuine issue of material fact indeed exists. Pinney Dock and Transp. Co. v. Penn Cent. Corp., 838 F.2d 1445, 1472 (6th Cir.), cert. denied, 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988); Bouldis v. United States Suzuki Motor Corp., 711 F.2d 1319, 1324 (6th Cir.1983).
 
 
 15
 Section 701(j) was added to the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq., in order to secure for individuals who are privately employed the same constitutional protections as individuals who are employed by the federal, state or local governments.[3] Under this section, a private employer must make reasonable accommodations to the religious needs of employees but need not make accommodations that pose an undue hardship. Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 66, 97 S.Ct. 2264, 2268, 53 L.Ed.2d 113 (1977).
 
 
 16
 As the district court pointed out, Title VII entitles employees only to a reasonable accommodation, not an absolute one. Citing the Supreme Court's decision in Ansonia Bd. of Educ. v. Philbrook, 479 U.S. 60, 107 S.Ct. 367, 93 L.Ed.2d 305 (1986), the district court concluded that a private sector employer is not required to allow an employee to satisfy a religious objection and agency fee requirement by substituting charitable contributions in a proportion greater than that which the union expends on objectionable activities. Noting that the Supreme Court explicitly stated that there is "no basis in either the statute or its legislative history for requiring an employer to choose any particular reasonable accommodation" and that "[b]y its very terms, the statute directs that any reasonable accommodation by the employer is sufficient to meet its accommodation obligation," id. at 68, the district court concluded that the union's proposal accommodated Roesser's religious beliefs and, therefore, was reasonable as a matter of law. While we cannot quarrel with the district court's general statement of the law, we nonetheless disagree with its application of that law to the circumstances of this case since the result was to excuse the union from making any effort to accommodate that portion of Roesser's religious belief which prevents him from associating in any way with the MEA and NEA.
 
 
 17
 In determining whether the proposed accommodation was reasonable as a matter of law, the district court accepted as true the sincerity of Roesser's religious belief. His objection to application of the agency shop clause to him is that it requires him to compromise his religious beliefs in two distinct fashions. As he stated in his affidavit, "I may not pay money to the union to support ... pro-abortion activities nor may I associate with the union because of these activities." The objection has both a contribution and an association element. The union's proposed rebate was directed at accommodating Roesser's belief that he could not contribute directly to an organization that has adopted a pro-choice position. The proposal, however, ignored the second element of his objection because he would still be required to associate with objectionable organizations. Despite the fact that the union did not even attempt to accommodate the second prong of Roesser's religious belief, the district court concluded that the proposal was reasonable as a matter of law. In so deciding, the district court noted several cases from this circuit which had previously established the principle that, while an absolute accommodation is not required, an employer may not be excused for failing to make some effort to accommodate an employee's religious needs. Smith v. Pyro Mining Co., 827 F.2d 1081 (6th Cir.1987), cert. denied, 485 U.S. 989, 108 S.Ct. 1293, 99 L.Ed.2d 503 (1988); McDaniel v. Essex Intern, Inc., 696 F.2d 34 (6th Cir.1982) ("McDaniel II "); McDaniel v. Essex Intern, Inc., 571 F.2d 338 (6th Cir.1978) ("McDaniel I "); see also Tooley v. Martin-Marietta, 648 F.2d 1239 (9th Cir.), cert. denied, 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981). Despite the district court's effort to distinguish these cases, they are applicable to Roesser's situation.
 
 
 18
 For example, in Smith, the employee not only had a sincere religious objection against working on his Sabbath, he also objected to asking a fellow employee to work on the Sabbath. The employer's proposed accommodation was to allow the individual to arrange a shift swap with his fellow employees, a proposal which satisfied one prong of the employee's religious objection but still required the employee to engage in behavior which he thought was sinful. Recognizing that the accommodation would have been reasonable if the employee had no religious qualms about asking others to work the Sundays he was scheduled to work, this court held that such an accommodation was not reasonable under these circumstances as it did not resolve the inherent conflict between the employee's religious beliefs and his work obligations. Thus, we concluded that the employer was obligated to make further accommodation attempts unless such attempts would pose an undue hardship. Id. at 1088.
 
 
 19
 Here, the union was required to make some effort to accommodate the conflict between Roesser's religious belief against associating with the MEA and NEA and his employment obligation of paying the service fee. The fact that Roesser does not harbor a per se religious objection to labor unions is not dispositive. In order to invoke the employer's duty to offer a reasonable accommodation, it is sufficient that the employee establishes that he holds a sincere religious belief that conflicts with an employment requirement. Since the sincerity of Roesser's religious belief was taken as true for the purposes of ruling on the motion for summary judgment, the district court erred in concluding that an accommodation offered by an employer which does not even address, let alone resolve, the employee's conflict is reasonable as a matter of law. The duty to accommodate cannot be defined without reference to the specific religious belief at issue. Here, the employer was confronted with two religious objections, one of which was completely ignored. Accordingly, this cause must be remanded for a determination as to whether Roesser's entire religious belief may be reasonably accommodated short of undue hardship.
 
 
 20
 Although consideration of this dispute upon remand may lead to a number of accommodations that would prove reasonable, we recall that one potential accommodation was mentioned at oral argument. While Roesser's sincere religious belief may constrain him from associating in any way with the MEA and NEA, it does not appear that he harbors religious objections to associating with the local professors' union which has not adopted a position on the issue of abortion. If that be the case, and although the union is free to offer any reasonable accommodation, one reasonable accommodation may be for Roesser to pay all of the agency fee, including the amount normally forwarded to the MEA and NEA, to the local union to be used solely for local collective bargaining purposes.
 
 III.
 
 21
 For the reasons set forth, the judgment of the district court is reversed and this cause is remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 Roesser became aware of the MEA's position when it mounted a petition drive to remove a Michigan state probate judge who compelled an 11-year-old ward of the court to carry her pregnancy, the result of a rape, to term. Similarly, Roesser became aware of the NEA's position through its statement of December 16, 1981, before the Subcommittee on the Constitution of the Senate Judiciary Committee, in which it expressed strong opposition to "all proposals that would constrict the availability of abortions and other reproductive health care."
 
 
 [2]
 Roesser is a Roman Catholic who believes that the Church teaches that a member should not campaign in favor of abortion laws, vote for abortion laws or collaborate in their application. To engage in such activities, Roesser believes, would place his "eternal soul in peril."
 
 
 [3]
 Section 701(j) states:
 The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.