NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0568n.06

Case No. 15-1891

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Oct 13, 2016
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| PAMELA CAMPBELL, Individually and as next friend of JANE DOE, a minor | ) ) ) | |
| Plaintiff-Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| v. | ) ) | |
| DUNDEE COMMUNITY SCHOOLS; WEST EDUCATIONAL LEASING; FREDERICK AARON CARNER; BRUCE NELSON | ) ) ) ) | |
| Defendants-Appellees. | | |

_____/

Before: MERRITT, ROGERS, and KETHLEDGE, Circuit Judges.

**MERRITT, Circuit Judge.** This case on appeal is brought by plaintiff-appellant Pamela Campbell, the mother of a middle school student who was the victim of repeated sexual abuse by Richard Alan Neff, her school basketball coach. The student, "Jane Doe," became involved in a relationship with Neff beginning in the summer of 2009 and ending on April 23, 2010, when a school janitor discovered Doe and Neff engaging in a sex act. The plaintiff filed suit, raising claims against Dundee Community Schools, West Educational Leasing, Inc. (d/b/a "Professional Contract Management, Inc." or "PCMI"), Athletic Director Fredrick Aaron Carner, and Superintendent Bruce Nelson under Title IX, 42 U.S.C. § 1983, and Michigan state law. The

United States District Court for the Eastern District of Michigan granted the defendants' motions for summary judgment on the Title IX, 42 U.S.C. § 1983, and various state law claims. The rest of the plaintiff's state law claims were dismissed without prejudice. On appeal, the plaintiff argues that the district court erred in dismissing the Title IX and 42 U.S.C. § 1983 claims.[1]

The district court correctly dismissed the claims. No reasonable jury could return a verdict for the plaintiff on either. We **AFFIRM** the district court's grants of summary judgment to the defendants.

## I. Factual Background and Procedural Posture

Jane Doe attended Dundee Middle School as a seventh and eighth grade student during the 2008-09 and 2009-10 school years. Doe was a member of the girls' basketball team during both years. From 2001 to 2010, the girls' team was coached by Richard Neff, who by 2010 was 47 years old. Doe's father, Chris Campbell, was an assistant coach during the two years that Doe was on the team. He was in a position to observe the behavior between his daughter and Neff, but did not report or suspect an improper relationship.

At the beginning of Doe's seventh grade season in January 2009, Neff began texting Doe and other girls on the team. Initially, Neff's texts to Doe reflected a typical "student/coach relationship." But by the summer of 2009, Neff's texts to Doe became "excessive" and involved topics unrelated to basketball or school. Neff began calling Doe regularly, and at the end of June, Neff secretly kissed Doe on the cheek while he visited Doe's home to watch a hockey game with Doe's father.

---

[1] The plaintiff also appealed the district court dismissal of two of her state law claims: (1) negligent hiring as to West Educational Leasing (i.e. PCMI) and (2) violation of Michigan's Child Protection Law as to Dundee Community Schools, Nelson, and Carner. M.C.L. § 722.621. The plaintiff does not raise these claims in her brief, and they are waived. Even if they were not waived, this Court agrees with the district court that the claims were properly dismissed on the merits.

Neff secretly began a sexual relationship with Doe during the fall of 2009. Neff would covertly visit Doe's family's property around 6:30 a.m., and Doe would sneak out of the house to visit Neff in his car. During these encounters, Neff would hug, touch, and kiss Doe. Neff's texts and phone calls to Doe also became sexual in nature.

West Educational Leasing, Inc., doing business as Professional Contract Management, Inc. ("PCMI"), took over employment responsibilities for the Dundee School District Athletic Department in 2010. As part of the arrangement West Educational Leasing did criminal background checks on Neff and other Dundee employees, but did not conduct interviews. There was no indication of prior criminal activity from Neff's background check. School District Superintendent Bruce Nelson certified that there was no documentation of unprofessional conduct in Neff's personnel file at that time.

Neff and Doe's sexual relationship continued during the eighth grade basketball season, and from January to April 2010 Neff and Doe had sexual contact "[a]t least 15 times." Neff had sexual contact with Doe in a school equipment room before practices and home games and, on at least one occasion, surreptitiously in the back of the team bus returning from a game. Neff instructed Doe to keep their relationship secret, and Doe testified that she did not disclose the relationship to anyone. There is no witness testimony suggesting anyone knew of the sexual relationship while it was ongoing.

During Doe's eighth grade season, Aaron Carner, the school district's athletic director, received complaints from parents that Neff was sitting in the back of the bus when the team traveled and was calling and texting students on the team. A teammate's parent, Jessica Burd, complained about Neff and Doe's relationship in late February 2010 to the school's vice principal, along with Neff and Carner. Burd complained that Doe was "in love" with Neff, that

Neff favored Doe during practice, that Doe's infatuation was causing friction among team members, and that school administrators should "put a stop to" the problem. But Burd never saw Doe's "crush" reciprocated by Neff. Indeed, Burd's concern was that *Doe's* behavior was "odd" and negatively affecting the "team dynamic," and that Neff "was not doing enough to stop it." Burd expressed shock to learn of the sexual relationship after Neff was caught.

Carner discussed the parent complaints with Neff, and instructed him to stop texting players and to no longer sit with players in the back of the bus. According to Carner, the parents' complaints did not lead him to believe Neff was acting inappropriately, and the central purpose of his discussion with Neff was to "protect [Neff] at the time" and to respect "normal protocol."

On April 23, 2010, school janitor Robert Kominek observed Neff and Doe engaging in sexual contact in a janitor's closet after school hours. Kominek promptly reported the incident to Athletic Director Carner, who in turn called District Superintendent Nelson. Acting on Nelson's instructions, Carner called both the police and Child Protective Services. Neff was arrested, prosecuted, and convicted of two counts of first-degree criminal sexual conduct, one count of second-degree criminal sexual conduct, and one count of soliciting a child for immoral purposes. He is currently incarcerated.

Pamela Campbell, Jane Doe's mother, filed suit against Neff, Carner, Nelson, Dundee Community Schools, and West Educational Leasing, asserting Title IX, 42 U.S.C. § 1983, and Michigan state law claims. The district court granted the defendants' motion for summary judgment with respect to Title IX, § 1983, and various state law claims. The district court denied the defendants' motions for summary judgment on plaintiff's state law claims for (1) violation of the Elliott-Larson Civil Rights Act, M.C.L. § 37.402(a), against Dundee Community Schools,

Nelson, and Carner; and (2) vicarious liability for Dundee Community Schools for Neff's negligent infliction of emotional distress. However, because the district court had granted dismissals for all the federal law claims, it dismissed the remaining state claims without prejudice for lack of jurisdiction. Plaintiff now appeals to this Court seeking reversal of the district court's grant of summary judgment on her Title IX and 42 U.S.C. § 1983 claims.

We review *de novo* a district court's grant of summary judgment. *Equal Employment Opportunity Commission v. University of Detroit*, 904 F.2d 331, 334 (6th Cir. 1990). Summary judgment is proper only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing a summary judgment motion, we view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## II. Title IX Claim

The plaintiff Campbell appeals the dismissals of the Title IX actions against Nelson, Carner, West Educational Leasing, and Dundee Community Schools. "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX actions for monetary damages are available to students subjected to sexual harassment or abuse by a teacher. *See Williams ex rel. Hart v. Paint Valley Local Sch. Dist.*, 400 F.3d 360, 367 (6th Cir. 2005).

Only recipients of federal funds may be liable under Title IX. *Soper v. Hoben*, 195 F.3d 845, 854 (6th Cir. 1999) (explaining that the government's enforcement power may only be exercised against the funding recipient itself, and damages liability under Title IX has not

extended damages liability to parties outside the scope of this power). Title IX does not permit individual liability against school officials for sexual harassment as only recipients of federal funds can be held liable under Title IX. *See id.* Accordingly, Nelson and Carner cannot be held individually liable, and the actions against them were properly dismissed.

Similarly, Title IX does not extend liability to West Educational Leasing since it did not receive federal funds. It is not enough that an entity "benefit economically from federal assistance." *National Collegiate Athletic Ass'n v. Smith*, 525 U.S. 459, 468 (1999). A fund recipient's damages liability for sexual harassment under Title IX is limited to circumstances where the recipient has substantial control over both the harasser and the context in which the known harassment occurs. *Davis v. Monroe Cty Bd. of Educ.*, 526 U.S. 629, 645 (1999). West Educational Leasing had neither. The Title IX action against West Education Leasing, Inc. was therefore correctly dismissed.

Dundee Community Schools does not contest that it is a recipient of federal funds for purposes of Title IX, nor does it contest that its employee sexually abused Doe. A school district's liability under Title IX for sexual harassment of a student requires a plaintiff to show "an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's misconduct." *Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274, 277 (1998). While Superintendent Nelson and Athletic Director Carner are school officials who have the authority to institute corrective measures against sexual harassment, the plaintiff did not provide sufficient evidence that either had actual notice or showed deliberate indifference.

The plaintiff argues that actual notice of a substantial risk of sexual harassment or abuse was provided to school officials in a number of ways. These indications include: Neff's habit of

sitting in the back of the bus with the girls on the team; Neff texting and calling the girls on their cell phones; Jane Doe's "crush" on Neff; and the school custodian having a "weird feeling" about Neff and Doe's relationship, which the custodian did not report until after the relationship was discovered. Director Carner spoke to Neff about the behavior after receiving parent complaints, but neither the complaints nor Carner's talk with Neff show any indication that there was a risk of a sexual relationship between Neff and Doe. The complaints were related to preserving the "team dynamic" by not showing favoritism. Under the actual notice standard, the plaintiff must be able to show that the authority figures were on notice of a substantial risk of the actual type of harassment that occurred. *See Davis*, 526 U.S. at 654. "Communications at odd hours, inappropriate counseling, unchaperoned off-campus activities, and inappropriate interactions with team members" do not provide notice that sexual harassment is occurring. *Henderson v. Walled Lake Consol. Schools*, 469 F.3d 479, 490 (6th Cir. 2006). Doe and Neff intended to keep the relationship secret, and did so successfully until they were caught. Even Doe's father, who was also coaching the team, was fooled. This fact gives rise to the inference that the other observers with more distant relationships to Doe were not at fault when they did not take action to remedy or report the unknown sexual activity. The custodian's later reporting that he had a completely internal and undiscussed "weird feeling" is not a basis for liability.

Nor was Dundee Community Schools deliberately indifferent to sexual harassment or abuse. "A [federal assistance] recipient is liable for damages only where the recipient itself intentionally acted in clear violation of Title IX by remaining deliberately indifferent to known acts of harassment." *Vance v. Spencer Cty. Public School Dist.*, 231 F.3d 253, 260 (6th Cir. 2000). "The deliberate indifference must, at a minimum, 'cause [students] to undergo' harassment or 'make them liable or vulnerable' to it." *Id.* (quoting *Davis*, 526 U.S. at 654). If

there was no notice to school officials of a risk of sexual harassment occurring, then there was no deliberate indifference toward the risk.

The plaintiff contends that Director Carner's testimony showed his indifference when he advised Neff to stop sitting in the back of the bus. Carner stated that, "the conversation was to protect [Neff] at the time. It wasn't a red flag for me as far as, you know, is he doing anything inappropriate or not" and "I felt like [Neff was] putting himself in a situation that was not good for him as far as sitting in the back of the bus [in] the dark with kids, more importantly, girls." While the plaintiff claims that these statements prove that Carner was aware of and covering up Neff's behavior, the statements show just the opposite. Carner's concern was that Neff should follow protocol, not that there was a substantial risk that Neff was engaged in a sexual relationship with Doe. There is no evidence that any school official, or even any other person, was aware of the risk. Accordingly Dundee Community Schools did not intentionally disregard such a risk. The grant of summary judgment for Dundee Community Schools was proper.

### III. § 1983 Claim

The plaintiff Campbell also appeals the grants of summary judgment for Superintendent Nelson and Athletic Director Carner, as well as Dundee Community Schools, for her claims based on §1983. In order to hold Dundee Community Schools liable under § 1983, the plaintiff must overcome the requirements of *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Under *Monell* the plaintiff may not base her claim on a theory of *respondeat superior*, but must show that the schools' officials were acting according to a "policy" or "custom" within the system that leads to or results in the deprivation of a constitutionally protected right of bodily integrity, specifically the right not to be sexually molested by her coach. *Id.* at 694. The plaintiff does not seem to assert that the sexual abuse resulted from an officially enacted policy or a

custom that is "so permanent and well settled as to constitute a custom or a usage with the force of law." *Id.* at 691. A lack of knowledge of the sexual misconduct that was successfully concealed for almost a year is not a "custom" of Dundee Community Schools.

As to Nelson and Carner, the plaintiff must show that the officials' conduct violated a constitutional right and that the right is "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). The burden is on the plaintiff to show that the officials are not entitled to qualified immunity. *Binay v. Bettendorf*, 601 F.3d 640, 647 (6th Cir. 2010). The plaintiff must show that the supervisory officials "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). In this case the individual defendants had no reason to believe that Doe was being sexually assaulted or molested by Neff because she and Neff successfully hid their relationship. Apparently not even Doe's own father, who also coached the basketball team, had any suspicion that the relationship was occurring. Moreover, the mother, plaintiff Campbell, apparently had no suspicion either, even though Neff was a friend and visitor to the Campbell home and the daughter sometimes sneaked out of the house to meet Neff. There are no facts of the slightest kind indicating guilty knowledge, negligence, or deliberate indifference on the part of the school supervisory officials.

Accordingly, the judgment of the district court is AFFIRMED.